Ferry, Appellant, *v.* Kownacki.

Argued March 23, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*George F. Taylor*, with him *Taylor, McNaugher & Duerring*, for appellants.

*John A. Metz, Jr.*, with him *Samuel N. Goldman, Joseph B. Mitinger*, and *Metz, Cook, Hanna & Kelly*, for appellees.

OPINION BY MR. JUSTICE BOK, June 30, 1959:

Appellees, Peter and Violet Kownacki, own a tract of land in Bethel Borough, Allegheny County, at the northwest corner of Baptist and Boroughton Library Roads which contains almost two acres and was purchased in 1946. The entire tract is zoned Residential-3, which prohibits the erection of a gasoline station.

The appellees sought a building permit to erect a gasoline station on the above property and, after the refusal of the building inspector to grant it, appealed to the board of adjustment. After a hearing, the board

granted the variance and appellants, taxpayer-owners of real estate in the immediate vicinity, took an appeal to the County Court of Allegheny County. A full hearing was held and after additional testimony had been presented the court sustained the board. This is an appeal from the court's order.

As we said in *Edwards Zoning Case*, 392 Pa. 188, 193, 140 A. 2d 110 (1958), the scope of review by this Court in a zoning case ". . . is as on broad certiorari, and we inquire whether there is substantial evidence to support the findings of fact, whether the record is free from mistake of law, and whether there has been an abuse of discretion." Since the court below took additional testimony, the question before us is whether the court rather than the board abused its discretion or committed error. The rule about granting a variance is well stated in *Richman v. Zoning Board of Adjustment*, 391 Pa. 254, 137 A. 2d 280 (1958) :

"The sole justification for the grant of a variance is that a strict application of the terms of the zoning statute will result in an 'unnecessary hardship', and, even then, the variance can be granted only if 'the spirit of the ordinance shall be observed; the public health; the public safety; and the general welfare secured; and substantial justice done'. He who seeks a variance has the burden of proving justification for its grant. The 'hardship' which must be proven must be an 'unnecessary', not a 'mere' hardship, as well as 'unique or peculiar to [the property involved] as distinguished from the impact of the zoning regulations on the entire district'. The fact that an increase or decrease in value will result from the grant or refusal of a variance will not, standing alone, constitute a sufficient hardship.

"On an appeal from the grant or refusal of a variance we examine the record only to ascertain whether the action taken was clearly arbitrary, capricious or

unreasonable or in clear violation of positive law. The grant of a variance depends on the circumstances of each particular case and evidence of the grant of similar variances in similarly zoned areas is not admissible."

See also *Triolo v. Exley*, 358 Pa. 555, 57 A. 2d 878 (1948); *Borden Appeal*, 369 Pa. 517, 87 A. 2d 465 (1952); *Mack Zoning Appeal*, 384 Pa. 586, 122 A. 2d 48 (1956); *Baronoff v. Zoning Board of Adjustment*, 385 Pa. 110, 122 A. 2d 65 (1956); and cases collected in Wolffe's Pennsylvania Zoning Digest (1958), pp. 480-487.

The court below in its opinion said: "The respondents have submitted ample testimony to describe the uniqueness of the property involved with respect to its terrain; its deep ravine and gully; the open septic tank area depositing refuse therein, together with the three permanent drains taking surplus water from the various roads at the intersection into the property involved, as well as other characteristics to distinguish it from being proper land for residential use."

In addition, there is the evidence of value given by the witness King, a disinterested real estate broker. He testified that he offered it for residential sale and got no takers, and that he even tried offering it at a throwaway price in order to test the market. He said: "A. Well, it has been going on for almost a year, and I offered the property at a ridiculous figure to try to sell it, but they were not interested. And if you have a piece of property which the contractors recognize to be at a ridiculous figure, they would take it real quick. Q. How much did you ask for it? A. Well, we started at $3500 and had it down to $2500, but nobody was interested. . . . Q. Has it any value for residential purposes that you would put dollars and cents into? A. In my opinion and experience it doesn't. Q. Does the

topography lend itself to any residential use? A. No. I have already stated that. By Mr. Taylor: Q. But the property can be sold for something? A. Yes at a distinct sacrifice."

The instant case certainly stands on its own bottom. The effect of the zoning ordinance and the development of the area is to destroy the value of these peoples' land altogether, or at least to the distress level where buying sharks can always be found: that is not real value. It is not a case like *Pincus v. Power,* 376 Pa. 175, 101 A. 2d 914 (1954), where there was basic value but the siren voice of progress made a variance seem a luscious thing to have. Here there is not only no value above a "distinct sacrifice" that is a "ridiculous" figure, but there is no market at all. These people would become land-poor indeed.

The evidence clearly shows a substantial hardship that is unique and peculiar to this piece of land. It follows that there was no violation of law and no abuse of discretion in granting the variance.

The order is affirmed, costs to be paid by appellants.