Gro Appeal.
Mills Appeal.

Argued January 15, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused November 4, 1970.

*Franklin J. Seyfert,* with him *Seyfert & Emuryan,* for appellants.

*Donald J. Orlowsky,* with him *ReDavid, Orlowsky, Natale & Anderman,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, October 9, 1970:

This is a zoning appeal from a decision of the lower court granting a variance to permit the erection of fifty-nine apartment units. The appellants, a group of residents in the Township of Upper Darby, are opposed to the construction of such apartments.

The property has frontage of 353 feet along Ashurst Avenue and a depth of 120 feet along the northerly side of the property and a depth of 123 feet along the southerly side.

Ashurst Avenue is currently only partially paved and in poor condition and is not a through street along the subject property, with a dead end at the Pennsylvania Railroad tracks along the south side of the property, and ending on the north side at Primos Avenue.

The entire rear portion of the property, varying from five to eight feet in depth, is currently zoned Manufacturing-Industrial (M) and the remainder of the tract is zoned R-2 Residential under the Upper Darby Zoning Ordinance.

Under Section 203 of the Upper Darby Zoning Ordinance, when a zoning district boundary line divides a property held in single and separate ownership, the regulations as to the use in the less restricted district are permitted to extend an additional 50 feet into the more restricted district.

As a result of the aforesaid boundary tolerance provision, approximately 46 percent of the subject property can be legally developed under the Manufacturing-Industrial regulations, and under said regulations, apartment use is permitted by special exception.

All of the property abutting the rear or east side of the subject property is zoned "M" all the way out

to Oak Avenue, a distance of approximately 1,200 feet. In this area are located the industrial concerns of Franklin Printing, Crucible Steel, Building Units, Clifton Builders Supply, and other industrial uses.

To the south side, the subject property is bounded by the Penn Central Railroad tracks, elevated about eight feet, which carry approximately 70 scheduled commuter trains per day on the Philadelphia-West Chester Branch.

On the opposite side of the railroad tracks is located a shopping center, zoned B-Business, running all the way out to Providence Road.

On the northside of the subject property is located the Primos-Secane Swim Club.

On the west or front side, the subject property is bounded by Ashurst Avenue along the side of which flows the Muckinipates Creek, and on the opposite side of the creek is located unimproved ground.

Because of the topography of the ground, and its adjoining Muckinipates Creek, extensive grading, roadwork, retaining walls and other improvements would be required to prepare the site for either single family residential or apartment development, the cost of site improvements alone being estimated at a minimum of $44,000.

Because of the irregular shape of the ground and its topography, a maximum of six single-family dwellings could be constructed on the property. Appellee testified that he paid $40,000 for the property. Therefore, after adding together the $40,000 appellee paid for the land and the approximate $44,000 cost of improvements and dividing by six, the court found that the cost of ground and improvement costs would be $14,000 per lot.

Based on expert testimony that a five-to-one ratio usually exists in the real estate industry between cost

of home and cost of ground and site improvement, the court found that the site and improvement costs would require the construction of homes in the $70,000 price range. The court found that there would be no marketability for single family homes in the $70,000 price range in the immediate area of the appellee's property because of the adjoining industrial use, railroad tracks, and neighboring residential area which was composed of homes in the $18,000 price range. Therefore, the court concluded that the property involved is subject to a unique and unnecessary hardship, thereby justifying the granting of a variance.

If those were all the facts in the case, we might agree with the lower court.

In *Richman v. Zoning Bd. of Adj.*, 391 Pa. 254 at 259-60, 137 A. 2d 280 (1958), we said: "The sole justification for the grant of a variance is that a strict application of the terms of the zoning statute will result in an 'unnecessary hardship,' and, even then, the variance can be granted only if 'the spirit of the ordinance shall be observed; the public health; the public safety; and the general welfare secured; and substantial justice done' .... He who seeks a variance has the burden of proving justification for its grant. ... The 'hardship' which must be proven must be an 'unnecessary,' not a 'mere' hardship, ... as well as 'unique or peculiar to [the property involved] as distinguished from the impact of the zoning regulations on the entire district.' "

Although it frequently has been stated that economic or financial hardship is not in itself sufficient to sustain the granting of a variance, *Cooper v. Board of Adjustment*, 412 Pa. 429, 195 A. 2d 101 (1963); *Jasy Corp. v. Board of Adjustment*, 413 Pa. 563, 198 A. 2d 854 (1964), this doctrine has only been applied where it is a question of more profits from one type of development as opposed to another type of development.

In the instant case, there was evidence that *appellee* could not develop this land for residential purposes at a profit because there would be no market for homes in the price range he would need to construct in order to make a profit on his $84,000 investment. Thus, the case is similar to the situation in *Garbev Zoning Case,* 385 Pa. 328, 122 A. 2d 682 (1956), where we emphasized the following facts:

"Appellant's land is not suited for residential purposes because of the difficult problems presented by Naylor's Run, the storm and sanitary sewers crossing part of it, the heavy traffic along Garrett Road, the railroad which borders the property, the railroad freight area adjoining the property on the east, the unsightly elevated trolley bridge along the north side of Garrett Road with almost constant noise from passing trains, and the limited access to the tract.

"It would not be economically feasible or practical to build houses on this tract."

Similarly, in the case of *Ferry v. Kownacki,* 396 Pa. 283, 152 A. 2d 456 (1959), we upheld the granting of a variance to permit the construction of a gas station where the record showed that the property in question could not be developed for residential purposes because there was no market at all because of the prohibitive costs imposed by the terrain.

However, unlike the situations in *Garbev* or *Ferry,* appellee purchased the subject premises in April of 1968 with full knowledge that the area in which the subject premises were situated was zoned for residential use. Moreover, the record indicates the property was worth $40,000, the price appellee paid, only if the property was granted the anticipated variance. The following colloquy is quoted from the cross-examination of Mr. deGrouchy, appellee's expert witness: "Q. From your examination of this could you state any particu-

lar attributes that this property would have that would bring the forty thousand instead of the eighteen that similar properties in the area would bring? A. Yes sir. I consider this a most logical property to be rezoned in that that is what every bit of evidence shows, that this abuts industrial, it abuts a piece used as commercial, it abuts a railroad, it is separated naturally, just like drawing a square to show that it is included in the industrial part of the place there. That is what the man paid for."

The zoning power is one of the tools of government which, in order to be effective, must not be subjected to judicial interference unless clearly necessary. For this reason, a presumption of validity attaches to a zoning ordinance which imposes the burden to prove its invalidity upon the one who challenges it. *Nat. Land & I. Co. v. Easttown Bd. of A.,* 419 Pa. 504, 215 A. 2d 597 (1965), and cases there cited.

Under such circumstances, that which we said in *Crafton Borough Appeal,* 409 Pa. 82, 185 A. 2d 533 (1962), is apposite: "When [the purchaser] acquired the property he did so with the conditions of [the now claimed] economic hardship staring [him] in the face, and [he] cannot now be heard to complain [citing cases]."

In order for a hardship to be unnecessary, it cannot be self-inflicted. Here, the appellee, by paying $40,-000 for the land, created circumstances which made it impossible profitably to construct single family residences upon the property for a price at which they could be sold. He gambled that he could obtain a variance which would make his purchase profitable. The case is, therefore, somewhat similar on its facts to the situation existing in *Edwards Zoning Case,* 392 Pa. 188, 140 A. 2d 110 (1958), where we said:

"Because of the expenditure of $28,000 paid for the land, Edwards is unable profitably to construct single-family houses upon the property for a price at which they could be sold. He therefore contends that he requires a variance in order to develop his land.

"When property is purchased pursuant to a plan of development for uses unauthorized by an existing zoning ordinance, and the plan miscarries, the purchaser is not entitled to a variance to permit his land to be used for other unauthorized purposes, even though he will otherwise suffer financial loss, if the property can reasonably be used for purposes permitted by the ordinance.

"Appellee bought the property with full knowledge of the terms of the ordinance. At the time he made his purchase, at a highly inflated price, he should have investigated whether he could recoup his investment in the event that his plans to erect an office building for the hospital physicians did not materialize. Instead, Edwards chose to gamble that the hospital would agree to use the proposed building and that the commissioners would rezone the area to permit the construction thereof. It now appears that his gamble has been lost, and Edwards seeks to avoid the adverse financial consequences. However, neither his present loss nor his prospective financial advantage are sufficient justification for authorizing a departure from the Lower Merion Zoning Ordinance. See Fleming v. Prospect Park Board of Adjustment, 318 Pa. 582, 178 Atl. 813 (1935). . . . One who acquires property intending to circumvent the use restrictions of a zoning ordinance does so at his financial peril." See also *Crafton Borough Appeal, supra; Upper St. Clair Twp. Grange Zoning Case,* 397 Pa. 67, pp. 71, 72, 152 A. 2d 768; *Best v. Zoning Board of Adjustment,* 393 Pa. 106, at 109, 141 A. 2d 606 (1958) ; *Cooper v. Board of Adj., supra; Pyzdrow-*

*ski v. Pgh. Board of Adj.*, 437 Pa. 481, 263 A. 2d 426 (1970).

An important reason for this rule is apparent from a comparison of the facts of one of the cases cited by appellee, *Ferry v. Kownacki, supra,* with the facts in the instant case. In *Ferry,* the owners, before seeking a variance for the erection of a gas station, attempted to sell the property for residential purposes. The following testimony is quoted from the opinion: "In addition, there is the evidence of value given by the witness King, a disinterested real estate broker. He testified that he offered it for residential sale and got no takers, and that he even tried offering it at a throwaway price in order to test the market. He said: 'A. Well, it has been going on for almost a year, and I offered the property at a ridiculous figure to try to sell it, but they were not interested. And if you have a piece of property which the contractors recognize to be at a ridiculous figure, they would take it real quick. Q. How much did you ask for it? A. Well, we started at $3,500 and had it down to $2,500, but nobody was interested. . . . Q. Has it any value for residential purposes that you would put dollars and cents into? A. In my opinion and experience it doesn't.'"

In the instant case, there was no evidence of the purchase price of the subject premises if it were to be restricted for residential use.

Assuming that the land was purchased solely for residential development, there was, therefore, no evidence of the requisite price range for the construction of homes purchased at that site. Following from this, there was no evidence of whether there would be a market for such homes. As such, it is impossible to determine whether residential zoning imposes an unnecessary hardship on the property. It would surely be unfair for an owner to prove he was entitled to a variance

merely by paying an inflated purchase price for the property if the purchase price were inflated solely in the expectation of a variance.

Appellee argues that if we hold that because appellee purchased the property knowing its condition, and knowing its existing zoning classification, even though the property may be subject to an unnecessary hardship, he has no right to assert it; we are proposing an unconstitutional restriction on the free alienability of property. However, our holding does not have this effect.

We have frequently held that an equitable owner under a sales agreement for a piece of property, with the sale conditioned on the granting of a variance, qualifies as a party in interest in applying for a variance. *Nat. Land & I. Co. v. Easttown, supra,* at 514, and cases cited therein. Moreover, the original owner can test the restriction by showing he cannot sell the property because of the zoning restrictions. *Ferry v. Kownacki, supra.*

When a case seeking a variance is brought in either of these postures, it is possible to determine whether the existing restriction imposes an unnecessary hardship on the subject property. Only in a case such as this, which arises after the property has been sold to a new owner who has paid a high price for the property because he assumed that a variance which he anticipated would justify his price, do we hold that the owner cannot prove that the hardship which burdens his land was unnecessary rather than self-inflicted.

Order reversed.

———

Concurring Opinion by Mr. Justice Cohen:

I join in the opinion of Justice O'Brien but I am impelled to write this concurrence to observe that the dissenting opinion seeks to advocate a new legal con-

cept in the grant of variances, namely—that self-imposed economic hardship is a justification for the grant of a variance. The acceptance of such a principle would completely undermine all of our zoning legislation.

Mr. Chief Justice BELL joins in this concurring opinion.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The majority holds today that the appellee is not entitled to a variance because he inflicted the hardship upon himself. I cannot agree, and hence I must dissent.

The trial court found that the cost to prepare the site in question for residential development would be $44,531.50. In addition, the court found that a maximum of six single-family homes could be erected on the parcel. Since the parcel cost $40,000, the cost of improvements plus the land for each of the six homes would be approximately $14,000. In order to make a profit on this investment, the homes should cost five times the cost of the land plus site improvements—i.e., $70,000 each.

The majority does not dispute these figures. The majority holds, however, that the property was worth $40,000 only if apartments could be built on it. The majority then concludes that by paying what the land would be worth only if a variance were granted, the developer brought the hardship upon himself. He therefore cannot claim that his hardship was unnecessary, and is not entitled to a variance.

Admittedly there is no evidence as to the value of the land were it restricted to residential use, although the township's expert witness testified that it would be "substantially less" than $40,000. But even if we as-

sume that the developer paid *absolutely nothing* for the land, the land would still be unusable for single-family residences. Dividing the cost of just the site improvements by six, we find that each lot would cost $7,421.91 to develop. Multiplying this by the five-to-one ratio necessary, each house would have to sell for $37,109.55. These expensive homes would be located in a neighborhood surrounded by $18,000 homes, with adjoining industrial uses, and backing onto railroad tracks. I cannot believe that homes in this price range would be any more marketable than the $70,000 homes projected by the developer and the trial court.

The developer did not bring this hardship upon himself. Single-family dwellings cannot profitably be erected on this parcel regardless of the price paid for the land, or even if the land cost nothing as demonstrated above. Accordingly the land is subject to a unique and unnecessary hardship, and I would affirm the trial court's finding that appellee is entitled to a variance.