McKay v. Board of Adjustment.

Argued November 1, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Thomas P. Cole, II,* with him *A. C. Scales,* and *Scales and Shaw,* for appellant.

*Thomas R. Ceraso,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 27, 1973:

Mary E. McKay, in her capacity as Secretary to and by authority of the Township Commissioner of North Huntingdon, Westmoreland County, appealed the order of the Court of Common Pleas of Westmoreland County which upheld the North Huntingdon Township Board of Adjustment's grant of a variance to Florence M. Evans who sought to use her property as a gasoline service station.

Evans entered into an agreement of sale in 1962 and in 1964 applied for a variance under the applicable zoning provisions.[1] In 1965 the deed was executed. After a hearing held in 1966 a variance was granted. McKay

---

[1] It is significant to note that the zoning ordinance under which the application for variance was made was not adopted until July 9, 1964. Prior to that time, Evans had applied for a special use permit for the same tract under the then applicable zoning ordinance.

appealed to the Court of Common Pleas which after taking additional testimony affirmed the decision of the Board. Exceptions were taken and the Court of Common Pleas, sitting en banc, declared it was without jurisdiction to hear the case. This Court on appeal on that issue determined that the lower court did, in fact, have jurisdiction and remanded it for a hearing on the exceptions. *McKay v. Board of Adjustment*, 2 Pa. Commonwealth Ct. 609, 279 A. 2d 376 (1971). On remand, the lower court sitting en banc once again upheld the Board's decision to grant the variance. That ruling is the subject of this appeal.

Appellant contends (1) that the application of the R-2 single family dwelling zoning classification of the tract in question does not create an unnecessary hardship upon the property which is unique and peculiar to it; and hence the variance should not have been granted; and (2) that the court below abused its discretion in upholding the Board's decision because it failed to make specific findings of fact as required by the zoning ordinance and because the lower court itself also failed to make specific findings of fact.

We disagree with appellant's contentions and hold that the order of the lower court must be affirmed.

The importance of our scope of review once again is manifest in this zoning appeal. Where, as here, the court below took additional testimony, our function on appeal is to determine whether the court below committed an error of law or abused its discretion. *Durkin Contracting Co. v. Zoning Bd. of Adjustment*, 6 Pa. Commonwealth Ct. 211, 293 A. 2d 622 (1972); *Drop v. Board of Adjustment*, 6 Pa. Commonwealth Ct. 64, 293 A. 2d 144 (1972).

We are not unmindful of the burden placed upon an applicant to prove unnecessary hardship that is unique and peculiar to the property and that the proposed use will not be contrary to the public interest.

*Mobil Oil Corp., et al. v. Zoning Board of Adjustment,*
5 Pa. Commonwealth Ct. 535, 291 A. 2d 541( 1972);
*Jackson, et al. v. York City Zoning Board,* 5 Pa. Commonwealth Ct. 271, 290 A. 2d 438 (1972). We also realize that variances, especially those authorizing a commercial use in a residential district should not be generously granted. *Pfile, et al. v. Borough of Speers* (cross-appeals), 7 Pa. Commonwealth Ct. 226, 298 A. 2d 598 (Filed Dec. 21, 1972). The record before us merits our conclusion that the court below did not abuse its discretion nor did it commit an error of law in finding that applicant here had met her burden.

The court below considered both the evidence presented before the Board and also considered the additional evidence adduced at its de novo hearing. The uncontroverted facts establish that there are commercial uses erected in the immediate area; specifically, uses such as: a funeral home with a parking lot; a medical-professional center and an apartment building. All of these are under the blessing of variances. Also in the immediate vicinity are a school with a playground area, a fire station, and a tract on which a trailer home is located.[2]

Proximate to the property is a commercial area and commercial establishments such as a Dairy Queen snack bar and a supermarket abound in other areas.

There was some testimony that the property is suitable for residential purposes and that the proposed use would increase traffic but this was controverted by testimony that the property is not suitable for residential use.

In consideration of this evidence, the Board[3] determined that it was proper to grant the variance and gave

---

[2] It is not entirely clear from the record precisely how many trailers are located there but it is clear that there is at least one.

[3] The vote of the Board was 2-1 in favor of granting the variance.

the following reasons: (1) the clearing of the property will afford greater visibility to motorists approaching the intersection; (2) the illuminating lights of the service station would lessen the dangers at this intersection; (3) it would rid the township of a blighted piece of property; (4) it would eliminate the possibility of children getting injured on run-down and unkept property; (5) it would increase tax revenue; (6) the possibility that the property would be used as a single family residence is poor because of (a) the possibility of the state widening the road; (b) the dangers of property damage at a busy intersection; (c) the annoying sound of traffic; (7) the property has been and is presently a hazard with no effort made to correct that problem; (8) there is no reason to believe that traffic would increase; (9) the service station would be a distinct improvement and could be erected in such a way as to insure privacy to adjacent property.[4]

On this record and on the additional testimony taken, the court below found that the location of the premises, the nature of the traffic conditions, the surrounding area which included the funeral home, fire station, school, trailers and apartments combined to impose a unique and particular hardship on this property. The court also found that the area of the premises is developed on a commercial basis; that the intended use was not detrimental to the public welfare of the neighborhood and that the hardship was not self-inflicted. The court en banc, on exceptions, agreed.

A reviewing court will not substitue its findings for those of the lower court where there is competent, credible evidence in the record upon which the decision of the court could be based. *Township of Lower Yoder v.*

---

[4] The variance was granted subject to the conditions that suitable screening shrubbery be placed at the boundaries and an identifying historical marker be maintained.

*Weinzierl,* 2 Pa. Commonwealth Ct. 289, 276 A. 2d 579 (1971).

This case is for the most part factually similar to *Pfile.* There is one distinction which merits reference. There an application for a variance was filed but the landowner had knowledge of the zoning restriction when he bought the land. This is not so in the case at bar. The Board in *Pfile,* however, had initially denied the variance whereas here the Board granted the variance and the court, after the de novo hearing, sustained the Board.

In *Pfile,* supra, it was stated at 7 Pa. Commonwealth Ct. at 234, 298 A. 2d at 603, that "[g]enerally, economic or financial hardship is not *in itself* sufficient to sustain the granting of a variance, but '. . . this doctrine has only been applied where it is a question of more profits from one type of development as opposed to another type of development.' [Citation] However, when, *on rare occasions,* the record appears to show 'property hardship' in the sense of total loss of usability for any of the permitted uses, a use variance will be affirmed . . . [citations]." We agree with the court below that the evidence shows that such property hardship does exist in this case.

Further, this is not a self-inflicted hardship situation which was found in *Gro Appeal,* 440 Pa. 552, 269 A. 2d 876 (1970). There it was said: "only in a case . . . which arises after the property has been sold to a new owner who has paid a high price for the property because he assumed that a variance which he anticipated would justify his price, do we hold that the owner cannot prove that the hardship which burdens his land was unnecessary rather than self-inflicted." *Gro Appeal,* 440 Pa. at 560, 269 A. 2d at 880-1. The agreement of sale which bound Evans was executed *prior* to the enactment of the present zoning ordinance. *Gro* is not in point.

Appellant's final contention that the findings of the Board and the court below were not specific enough to satisfy the zoning ordinance is without merit. Section 9.7-3 of the Township ordinance provides: "The Board of Adjustment shall not grant a variance from the regulations of this Ordinance unless the said Board shall make a finding of fact or facts based upon the evidence as presented in each specific case that: 1. The particular physical surrounding, shape or topographical conditions of the specific hardship upon the owner, as distinguished from a mere inconvenience, if the strict letter of the regulations were carried out; 2. The conditions upon which the petition for a variance is based are unique and would not be applicable, generally, to other property within the same zoning classification; 3. The alleged difficulty or hardship has not been created by any person presently having an interest in the property; 4. The granting of the variance will not be mutually detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located. . . ."

We have no doubt that the Board and especially the court clearly demonstrate that both tribunals considered the command of the ordinance and on the basis of the evidence adequately articulated the result.

Affirmed.

---

DISSENTING OPINION BY JUDGE ROGERS:

I dissent because there is no evidence here to support the imposition of a gasoline service station upon the residential community of Circleville, North Huntingdon Township, contrary to the provisions of the Township zoning ordinance.

The appellee, the owner of the house and lot[1] in suit

---

[1] The house is in poor condition. The appellee advances this as a reason for the grant of the variance (although her neglect

and her proposed purchaser, the South Penn Oil Company, required a variance from the township's requirement that the property's use should be for residential purpose only. To obtain a variance the appellee was required to prove that the property could not feasibly be used for any permitted purpose. Under the cases, infeasibility might be proved either (1) by a showing that the physical characteristics of the property were such that it could not in any case be used for the permitted purpose or that the physical characteristics were such that it could only be arranged for such purpose at prohibitive expense (*Zoning Board of Adjustment v. Koehler,* 2 Pa. Commonwealth Ct. 260, 278 A. 2d 375 (1971); *Forest Hills Borough Appeal,* 409 Pa. 392, 187 A. 2d 166 (1963)); or (2) by proving that the characteristics of the area were such that the lot has either no value or only a distress value for any purpose permitted by the zoning ordinances (*Ferry v. Kownacki,* 396 Pa. 283, 152 A. 2d 456 (1959); *Peirce v. Zoning Board of Adjustment,* 410 Pa. 262, 189 A. 2d 138 (1963)). Since the property here is a lot with a dwelling house erected on it, there was no physical deterrent to its continued use for residential purposes. No effort whatsoever was made to prove that the lot was either without value or of only distress value as a residential property. Indeed, there is nothing in the record tending to show that the lot has a greater value if permitted to be used for a gasoline service station, the usual and unavailing basis for cases of this nature. See *DiSanto v. Zoning Board of Adjustment,* 410 Pa. 331, 189 A. 2d 135 (1963).

The only record of this case in the Zoning Hearing Board of North Huntingdon Township consists of the

---

of the property is the cause) not as evidence of the infeasibility of its use as a residence, but in support of the irrelevant argument that the neighborhood would be better off with a well cared for gasoline station than a dilapidated house.

Board's minutes of a meeting of December 22, 1966. The record is silent as to whether there was any sworn testimony heard by the Board, but one of the briefs informs us that there were only unsworn statements made to the Board. In any case the minutes are as follows:

"Special meeting of Board of Adjustment, North Huntingdon Township, was held at the Town House at 9:00 p.m., December 22, 1966. All members were present.

"Mr. Hassan made the following remarks:

"1. Hardship on land use was not established. The solicitor for the petition did not make any claim of hardship and admitted there were none in so far as land use was concerned.

"2. Proposed gasoline service station is within 300 feet of Circleville School.

"3. Residential development of property is very favorable.

"4. Alleged commercial precedents in area are without basis.

"5. Maintain residential character of area.

"Mr. Dick presented the following in the form of a letter (attached so that original may be filed):

"After careful study of application of Florence M. Evans it is my opinion that a variance should be granted for the following reasons:

"1. When property is properly cleared, it will give greater visibility to motorists approaching the intersection.

"2. The dangers at this intersection would be lessened by the illuminating lights of the service station.

"3. It would rid the township of a blighted piece of property.

"4. It would eliminate the possibility of children getting hurt on run-down and unkept property.

"5. The property would bring in greater tax revenue.

"6. The possible chance that this property would be used as a single family residence are poor due to:

"(a) Possibility of the State widening the road to accomadate [sic] the increasing flow of traffic.

"(b) The dangers of property damage at a busy intersection.

"(c) The annoying sound of traffic.

" 'The objections of the people in the area were taken into full consideration. Some of the objections had merit. If there had not already been commercial properties in the area, the picture could of changed. I recommend in order to protect the privacy of Mr. Flick's property (707 Robbins Station Road) that Mrs. Evans plant a screen of shrubbery or stand of pines between rpoperties [sic].'

### C. W. Dick

"Mr. Brown made the following remarks:

"1. Property as it is and has been for several years is definitely a hazard. There have been no efforts made to correct the problem.

"2. There is no reason to believe that traffic would increase at this intersection as the result of the proposed service station.

"3. The erection of the service station would be a distinct improvement.

"4. Proper shrubbery screening would assure privacy to adjacent property.

"A motion was made by Mr. Dick and seconded by Mr. Brown to grant the appeal for variance by Mrs. Evans. Contingent on the following:

"1. Approval is granted by the Board of Commissioners as required in Section 8.7 of the Zoning Ordinance.

"2. Suitable shrubbery screening be placed at boundaries with adjacent properties.

"3. The historical marker identifying Three Springs Camp be maintained on premises.

"Dick and Brown voted in favor of the motion and Hassan voted against the motion.

"The Board of Adjustment thereby grants the appeal for variance by Florence Evans on the property at Clay Pike and Robbins Station Road."

On appeal from the Board the court took evidence. This consisted of the testimony of residents of the neighborhood opposed to the application for variance and that of a real estate expert that the establishment of a gasoline service station on this lot would depress the value of the residential properties in the vicinity.

Indeed, the evidence produced in the court below, which stands unrebutted, is that the general neighborhood is 90 to 100 percent residential and that the only exceptions to residential use near the property are an elementary school across the street, a residence converted to funeral home use in the same block, and, at a greater distance, a building accommodating doctor's offices. The appellee by cross-examination brought out that U. S. Route 30 is close and is developed commercially and that there is a supermarket and Dairy Queen ice cream establishment somewhere in the area. However, the record also shows that Circleville sits on a height above U. S. Route 30 and that the market and the ice cream shop are a mile distant. Not only the testimony but photographs in the record clearly prove that the immediate vicinity of this lot is a quiet residential neighborhood. Its description on this record would, in my judgment, make out a creditable case for enjoining the establishment of a gasoline service station at the location here proposed as a nuisance at common law. *Prendergast v. Walls,* 257 Pa. 547, 101 A. 826 (1917);

*Hohl v. Modell,* 264 Pa. 516, 107 A. 885 (1919) ; *Pennell v. Kennedy,* 338 Pa. 285, 12 A. 2d 54 (1940).

I think that the court below committed an abuse of discretion and that its order should be reversed.

Judges MENCER and BLATT join in this dissent.