Alvin Simmers, Richard Piccolini, William Keyes, Dr. Frank Spitzer, Michael McKean, Appellants, *v.* Edward C. Rorer, et ux., Appellees.

Argued October 5, 1973, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

38

*John Philip Diefenderfer,* with him *Stuckert, Yates & Krewson,* for appellants.

*George T. Kelton,* with him *Begley, Carlin, Mandio, Kelton & Popkin,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., February 7, 1974:

This appeal is from an Order of the Bucks County Court of Common Pleas, dated April 5, 1973, which reversed the Zoning Hearing Board of Upper Makefield Township (Board) which denied Rorer's (Appellee) application for a special exception to use a portion of his land as a private airstrip exclusively for his own airplane.

Our reading of the record, which we find supportive of the findings of fact drafted by the Board, as adopted and supplemented by the lower court, reveals that Appellee purchased 137 acres of land and residence, known as Hunter's Hill Farm, located in Upper Makefield Township in 1970 with the intention of laying out a sod airfield to accommodate his twin engine Cessna. Appellee applied for and received a license to conduct a "personal use airport" from the Pennsylvania Bureau

of Aviation, and, pursuant to Section 613[1] of the Upper Makefield Zoning Ordinance, requested the Board to allow him such a use by special exception. After a hearing, the Board rejected Appellee's application, concluding that Appellee had "not met the conditions precedent to the granting of a special exception as established by the Upper Makefield Township Zoning Ordinance." Specifically, the Board found the proposed airstrip to be incompatible with "this carefully restricted 2-R Residential area because of its close proximity to existing and contemplated dwellings, the noise level created by Applicant's aircraft, the creation of an unnecessary danger to Applicant's neighbors during take-offs and landings from the proposed airstrip, and the fact that the intended airstrip is desired for Applicant's convenience only since reasonable alternatives to the proposed airstrip are readily available to the Applicant."

On appeal to the court below, additional evidence was taken by Judge WALSH relative to a change in ownership of the adjacent 43 acres to a landowner who favored the proposed use, and the inspection of the proposed site by the Bureau of Aviation prior to its issuance of a license to Appellee. The court, properly considering the merits of the application after its de novo hearing, concluded the protestants had not met their burden of proof that the proposed use would be injurious to the public health, safety and general welfare, and thus ordered the Board to grant the special exception. Hence this appeal.

------

[1] Section 613 of the Upper Makefield Ordinance provides as follows: "*Airfields*—1. No airplane landing field of any class shall be constructed, laid out, or maintained in the said Township, except by express authority of and after hearing had by the Zoning Hearing Board, said Zoning Hearing Board first giving notice to adjoining property owners, which must be by public notice published once a week for three weeks in a newspaper circulating generally in said Township."

The scope of our review in a zoning case, where the lower court has taken additional testimony, is limited to a determination of whether or not the decision of the lower court manifests an abuse of discretion or an error of law. *Marple Gardens, Inc. v. Zoning Board of Adjustment,* 8 Pa. Commonwealth Ct. 436, 303 A. 2d 239 (1973) ; *McKay v. Board of Adjustment,* 8 Pa. Commonwealth Ct. 29, 300 A. 2d 810 (1973) ; *City of Pittsburgh v. Herman,* 7 Pa. Commonwealth Ct. 243, 298 A. 2d 624 (1973). Our review of the lower court's findings of fact and the underlying record reveal neither an abuse of discretion nor an error of law, and so we affirm.

Appellants initially dispute that Section 613 of the Ordinance creates an airfield use by special exception, and, if it does establish a special exception, that it is void in that it fails to establish sufficient standards to control the discretion of the Board. The same challenge was presented in the companion case of *Brunner v. Zoning Hearing Board of Upper Makefield Township,* 315 A. 2d 359 (1974), and our disposition of the issues there is equally applicable to the instant case. Suffice it to say that Section 613 functionally, if not expressly, establishes an airfield as a special exception, and that Sections 100 and 101 of the Ordinance clearly provide sufficient standards to guide the Board in its decision-making function.

The difficult question here is whether the lower court committed an abuse of discretion in holding that Appellants have not met their burden of proving that the grant of the instant special exception to operate a private airfield would be detrimental to the public interest. Contrary to the position taken by the Board, the burden to prove such an adverse effect shifts to the protestants once an applicant has brought himself within the use permitted by special exception. *Sanko v. Zoning Hearing Board,* 6 Pa. Commonwealth Ct. 73,

293 A. 2d 141 (1972); Ryan, Pennsylvania Zoning, §5.2.5 (1972).

Our review of the record, as supplemented by the court below, reveals that protestants did no more than establish that the proposed airfield *might* have an adverse impact which is necessarily incident to the use permitted. As we said in *Zoning Hearing Board v. Konyk,* 5 Pa. Commonwealth Ct. 466, 470, 471, 290 A. 2d 715, 718 (1972): "The Legislature in providing for special exceptions in zoning ordinances has determined that the impact of such a use of property does not, of itself, adversely affect the public interest to any material extent in normal circumstances, so that a special exception should not be denied unless it is proved that the impact upon the public interest is greater than that which might be expected in normal circumstances."

Protestants' evidence consisted of testimony by adjacent landowners of the potential level of noise and danger incident to take-offs and landings by Appellee. This, however, will always be a possibility whenever a township permits airfields in residential zones. We are mindful of the fact that the nearest residence is almost one thousand feet from the proposed airstrip, and the only land over which the airplane would directly pass during take-off and landing has been purchased, since the decisions of the Board, by a landowner favoring the proposed use. Moreover, we are impressed by the testimony of an inspector from the Bureau of Aviation who confirmed that the proposed airstrip far exceeds all safety standards imposed by the Commonwealth for a personal use airport, and that the noise generated on either take-off or landing would not exceed that of a large truck passing along adjacent Route 532. Protestants presented no competent evidence of the impact of the proposed use on property values nor of its particular incompatibility with neighboring uses. In short, protestants have not established by a "high degree of

probability" that Appellee's airstrip would have a greater impact on the public safety and general welfare than was anticipated by the local legislature in-permitting the use by special exception. *Archbishop O'Hara's Appeal*, 389 Pa. 35, 54, 131 A. 2d 587, 596 (1957); *Zoning Hearing Board v. Konyk, supra; Lower Providence Township and Wood v. Ford*, 3 Pa. Commonwealth Ct. 380, 283 A. 2d 731 (1971).

Order affirmed.