A. Rhoades WILSON

v.

## PLUMSTEAD TOWNSHIP ZONING HEARING BOARD.

**Appeal of: Board of Supervisors of Plumstead Township.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2005.

Decided Feb. 3, 2006.

Reargument Denied April 13, 2006.

John B. Rice, Perkasie, for appellant.

Robert W. Gundlach, Jr., Warrington, for appellee.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN JUBELIRER.

Appellant, Plumstead Township, appeals from an opinion and order of the Court of Common Pleas of Bucks County (trial court), which, after taking additional evidence, reversed a decision of the Plum-stead Township Zoning Hearing Board (ZHB) and approved A. Rhoades Wilson's (Landowner) application for a variance to use the residence on his recently purchased property solely as an accounting office, which is not a permitted use within the applicable R–2 Residential Zoning District.

The property in dispute contains a single-family residence, which is situated between Easton Road (Route 611) and Old Easton Road in Plumstead Township, and is within the Township's R–2 Residential Zone (Property). Route 611, on which the Property fronts and which provides ingress and egress, is a heavily traveled road where cars travel at speeds exceeding fifty miles per hour. Old Easton Road, on which the Property backs and which does not provide ingress and egress, is a significantly less traveled road where cars travel at speeds between twenty-five and thirty miles per hour.

The R–2 District allows, *inter alia,* as a use permitted by right, "Home Occupations," which are defined as a use "conducted within an existing dwelling which is the bona fide residence of the principal practitioner...." (Ordinance § B12 at 37.) In addition to Home Occupations, the R–2 District allows, among other uses by right: general farming, agricultural retail, municipal building, public recreational facility, golf course; and, as a conditional use: place of worship, school, library, nursing home, day care facility, funeral home and a dwelling in combination with a business. (Ordinance § 800 at 104.) The R–2 District, however, does not permit an F3 Professional Office use in which the owner does not reside on the property.

Twenty properties on Route 611 are located within the R–2 District, and their uses include two churches, a legal nonconforming medical office, several resi-

dences without Home Occupations, and several residences with Home Occupations (Trial Ct. Test. at 45). Among the already existing Home Occupations on Route 611 is a contracting, plumbing, and landscaping company. There are also a significant number of commercial uses outside the R–2 District area of Route 611, both above and below it, including a tavern, auto body shop, bank, excavation company, and shopping center.

Landowner purchased the Property in June 2003, for $320,000.00, knowing that it was zoned R–2 Residential (ZHB Test. at 21) and, soon after, started renovations on his "residence." A zoning officer informed Landowner that he needed a building permit, which he then applied for and received from the Township based on plans he provided titled "Wilson *Residence.*" As Landowner proceeded with the renovations, the building inspector noticed work throughout the residence typical of an office, but was assured by Landowner that the renovations were only for a residence with a "Home Occupation."[1] After completion of the renovations, the zoning officer discovered that Landowner was not residing at the Property and the Property was being used only as an office. The zoning officer, thereafter, issued an Enforcement Notice for operating an impermissible F3 Professional Office, which is defined as "[b]usiness, professional or governmental offices other than [a medical or veterinary office]." (Ordinance § F3 at 53.) Landowner did not appeal this Enforcement Notice but, instead, filed an application to the ZHB for a variance to utilize the Property as an F3 Professional Office. Landowner, while also retaining

his residence of 20 years, subsequently moved into the Property so that he could operate a permissible Home Occupation. (Trial Ct. Test. at 40–41.)

At a hearing, the ZHB received evidence from Landowner, a real estate broker, the Township's building inspector/zoning officer/code enforcement officer (zoning officer), and several neighbors. The ZHB found the zoning officer's testimony credible, and rejected Landowner's contention that he intended to use the premises for a permitted Home Occupation use. Based on the evidence produced, the ZHB denied Landowner's application for a variance because the Property could be reasonably used as a single-family residence with a professional Home Occupation. The ZHB noted that Landowner bought the Property with knowledge that he could not conduct his business as an F3 Professional Office on the Property, so any hardship created was self-inflicted. The ZHB also noted that Landowner is seeking to maximize his financial gain, which is not a ground for a use variance. Landowner appealed to the trial court.

The trial court, upon Landowner's motion, took additional evidence of the commercial uses of neighboring properties, then reversed the ZHB and granted Landowner a variance to use the Property as an F3 Professional Office. Because the trial court took additional evidence, it reviewed the case *de novo* and made its own findings of fact. Section 1005–A of the Pennsylvania Municipalities Planning Code (MPC);[2] *Mitchell v. Zoning Hearing Bd. of the Borough of Mount Penn,* 838 A.2d 819, 825 (Pa.Cmwlth.2003).

---

1. When questioned before the ZHB as to whether the ceiling lighting he installed throughout the Property, including the upstairs, was typical of a residence, Landowner replied: "[i]t's what I grew up with, so the answer is yes." (ZHB Test. at 31.)

2. Act of July 31, 1968, P.L. 805, *as amended,* added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005–A.

■ The trial court relied on *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983) and *E. Torresdale Civic Ass'n v. Zoning Bd. of Adjustment of Phila. County*, 536 Pa. 322, 639 A.2d 446 (1994) for the law governing variances and reasoned that a party seeking a variance must establish that: (1) unnecessary hardship will result if the variance is denied; (2) the proposed use will not be contrary to the public interest; and (3) the variance will represent the minimum variance that will afford relief at the least modification possible. The trial court found that an "overwhelming majority" of the neighboring properties contained a "commercial use." (Trial Ct. Op. at 5). It reasoned that "the non-residential and commercial nature of the area near the Property renders it largely unusable for *traditional residential purposes* ...." (Trial Ct. Op. at 12) (emphasis added). Based on these findings and conclusions, it granted Landowner a use variance to allow the operation of an F3 Professional Office because: mandating use of the Property as a residence on a heavily traveled area highway, surrounded by a majority of properties containing a commercial use, is impractical; the surrounding uses are dissimilar and disharmonious; the grant of the variance would not be contrary to the public interest; and the requested variance is the minimum variance that will afford relief at the least modification possi-

ble.[3] The Township then appealed to this Court.[4]

Before this Court, the Township argues that the trial court: (1) erred by granting Landowner's motion to supplement the record; (2) erred by reversing the ZHB's denial of Landowner's application for a variance; and (3) misinterpreted and misapplied *Valley View* and *E. Torresdale*. The Township also argues that Landowner is precluded from any relief in this matter because he failed to appeal the Enforcement Notice and, instead, sought to cure the zoning violation through an application for a variance. We will first address whether the trial court properly took additional evidence, which consequently allowed it to review the case *de novo*. Then we will address the second and third issues together, because whether the trial court misapplied *Valley View* and *E. Torresdale* is critical to our analysis of whether the trial court properly granted the variance.[5]

Section 1005–A of the MPC governs the circumstances when a trial court is permitted to take additional evidence. That Section reads:

> If, upon motion, it is shown that *proper consideration* of the land use appeal *requires* the presentation of additional evidence, a judge of the court *may* hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review. If the record does not include findings of fact or if

---

**3.** The trial court issued a Supplemental Opinion in which it asserts that in its previous opinion it made findings of fact, although not in paragraph form, and would reissue the opinion in paragraph form if so required by this Court.

**4.** "Where the trial court [takes] any additional evidence on the merits, it must determine the case *de novo*, making its own findings of fact based on the record made before the board as supplemented by the additional evidence; this

Court must then determine on appeal whether the trial court, not the board, committed an error of law or an abuse of discretion." *Mitchell v. Zoning Hearing Bd. of the Borough of Mount Penn*, 838 A.2d 819, 825 (Pa. Cmwlth.2003).

**5.** Because of our holding in this case, we need not address the issue of whether Landowner's failure to appeal the Enforcement Notice precludes him from any relief.

additional evidence is taken by the court or by a referee, the court *shall make* its own findings of fact based on the record below as supplemented by the additional evidence, if any.

53 P.S. § 11005–A (emphasis added).

■ The Township, citing *Boron Oil Co. v. City of Franklin,* 2 Pa.Cmwlth. 152, 277 A.2d 364, 366 (1971) and *Lower Allen Citizens Action Group, Inc. v. Lower Allen Twp. Zoning Hearing Bd.,* 93 Pa.Cmwlth. 96, 500 A.2d 1253 (1985), argues that this section only permits a trial court the discretion to take additional evidence where: (1) a party was denied the opportunity to be heard or (2) relevant testimony was offered and excluded by a zoning hearing board. Accordingly, the Township asserts that, because the ZHB did not refuse the introduction of any evidence at the hearing and the Landowner was afforded a full opportunity to present its case, the trial court improperly exercised its discretion to take additional evidence. We disagree.

■ Under the plain language of Section 1005–A, it is within the trial court's discretion to decide whether to take additional evidence. *E. Consolidation and Distrib. Services, Inc. v. Bd. of Comm'rs of Hampden Twp.,* 701 A.2d 621, 624 (Pa. Cmwlth.1997), *pet. for allowance of appeal denied,* 553 Pa. 683, 717 A.2d 535 (1998). Here, the trial court deemed the additional evidence necessary for it to determine whether the Landowner established the requisite "unnecessary hardship" requirement for a variance. The cases relied upon by the Township—*Boron Oil Co.* and *Lower Allen*—concern situations where the issue was whether a trial court was *required* to take additional evidence, unlike here, where the trial court *chose* to

take additional evidence. Accordingly, the trial court did not commit an error of law or abuse its discretion by taking additional evidence.

Next, we address whether the trial court erred by reversing the ZHB's denial of Landowner's application for a variance. The Township argues that the trial court erroneously expanded the holdings in *Valley View* and *E. Torresdale* to compel the granting of a variance. We agree.

■ Our Supreme Court, in both *Valley View* and *E. Torresdale,* undertook an analysis of the Philadelphia Zoning Code, which is different from the MPC at issue here.[6] In Philadelphia, an applicant for a use variance must establish: (1) unique hardship to the property; (2) no adverse effect on the public health, safety or general welfare; and (3) that the variance will represent the minimum variance that will afford relief at the least modification possible. *E. Torresdale,* 536 Pa. at 447, 639 A.2d at 324–35. However, in municipalities governed by the MPC, like the Township, an applicant for a variance has the "heavy burden" of establishing:

(1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the *reasonable use of the property;* (3) the hardship is *not self-inflicted;* (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

---

6. Robert S. Ryan, Pennsylvania Zoning Law and Practice § 2.1.4 (2001) (explaining that Philadelphia, a city of the First Class, has always been exempted from the provisions of the MPC).

*Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807, 811–12 (Pa.Cmwlth. 2005) (citations omitted and emphasis added); Section 910.2(a) of the MPC.[7]

■ The Township argues that Landowner failed to establish the "unnecessary hardship" requirements for a variance, as found in the MPC. In particular, the Township asserts that any hardship resulting from the denial of the variance was self-inflicted because Landowner purchased the Property for $320,000.00, knowing the zoning regulations applicable to it. The Township further asserts that the requested variance is not required for the reasonable use of the Property, because Landowner is currently residing on the Property and operating his business as a permissible Home Occupation. We agree.

Landowner contends the variance requested is necessary for the reasonable use of his Property because the commercial nature of the surrounding uses and the heavily traveled Route 611 make the Property unsuitable for residential use, thus, creating the unnecessary hardship justifying the variance. Landowner also asserts that he did not create the hardship but, rather, the traffic and surrounding commercial uses created the hardship.

To support his assertion that "the mere fact that an applicant has purchased property with knowledge of its zoning classification does *not* mean that a variance must be denied on a theory of self-inflicted hardship" (Landowner's Br. 18) (emphasis in original), Landowner cites to our previous decisions in *Appeal of Grace Bldg. Co., Inc.*, 39 Pa.Cmwlth. 552, 395 A.2d 1049 (1979) and *Vacca v. Zoning Hearing Bd. of*

*Borough of Dormont*, 82 Pa.Cmwlth. 192, 475 A.2d 1329 (1984). We conclude that neither case supports the granting of a variance to Landowner.

In *Appeal of Grace*, we vacated the denial of a variance request to allow the construction of a single-family dwelling in a residential district on a pre-existing nonconforming lot that did not meet the township's dimensional requirements. In that case, we remanded to board so that it could take sworn testimony as to the entitlement to a variance and consider the issue of whether the property owner was entitled to a special exception.

*Appeal of Grace* involved a tax sale of residential property that had been a separate parcel prior to the zoning changes. Due to new size and set back requirements of the subsequently enacted zoning regulations, the property became nonconforming. We found that the landowner requested both a special exception as well as a variance, which would allow him to build a single-family residence on the property, but the Board only addressed the variance issue. In remanding, we offered some "points for consideration" to the Board.[8] We pointed to precedent in which a purchaser at tax sale could stand in the shoes of a pre-zoning owner, who would have been able to apply for a variance, because the hardship was not "created by the purchase itself." *Id.* at 1052. We then reasoned that, "[b]ecause zoning considerations relate primarily to the circumstances of the property and not to the identity of the owners, it would seem that subsequent purchasers can stand in the shoes of the original owner with respect to

---

7. Act of July 31, 1968, P.L. 805, Section 910.1 added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10910.2.

8. The Court's reasoning as to the "hardship" requirement for a variance cannot be considered the holding of the case, because the order was for a remand and the Court explicitly stated that the reasoning it provided offered only "points for consideration." *Appeal of Grace*, 395 A.2d at 1051.

a variance, provided that the claimed hardship *does not arise out of the purchase itself* . . .", but out of *the inherent characteristics of the property. Id.* (emphasis added). The hardship in *Appeal of Grace* was that the zoning ordinance's dimensional and set back requirements prohibited the construction of a single-family dwelling on a residentially zoned lot because of the lot's size, which pre-dated the zoning ordinance—thus, the size of the property was an inherent characteristic of the property. It was on this basis that we reasoned that the subsequent purchaser, regardless of his prior knowledge of the zoning restrictions, could stand in the shoes of the pre-zoning owner, and any hardship imposed would not be self-inflicted.

Here, unlike in *Appeal of Grace,* the claimed hardship was created by the purchase itself, not by the characteristics of the Property, and relates primarily to the identity of the owner. The hardship, which derives from Landowner's inability to utilize the Property solely as an office, was known or knowable at the time of purchase and prior to the renovations. In *Appeal of Grace,* it was not just the current property owner, but also every subsequent owner of the property, that would not be able to construct a residence within the restrictions of that residential district. Here, the evidence of record reveals that, not only can Landowner utilize the Property for a permissible Home Occupation, but also he and other neighboring landowners are currently operating permissible Home Occupations. Thus, the facts of this case are distinguishable from *Appeal of Grace* because, here, Landowner's claimed hardship does not derive from the inherent characteristics of the Property but, rather, from his personal desire to gain a greater use of the Property from the permissible and currently viable uses allowed in the R–2 District.[9]

We, moreover, find *Vacca,* which is cited by Landowner as supporting the grant of his requested variance, as presenting analogous facts and, in fact, supporting a denial of Landowner's requested variance. There, as here, the landowner sought a variance to allow the commercial use of his residentially zoned property, and presented evidence of the commercial uses of surrounding property and his property's placement on a heavily traveled road. We affirmed the denial of the requested variance, reasoning that the property's current use, as a single-family rental property, established that it was, in fact, being put to a reasonable use as zoned and, thus, did not justify the grant of a variance. *Id.* at 1332. We further reasoned that the claimed hardship was self-inflicted because the landowner had recently paid a high price for the property under the false assumption that he would receive a variance. *Id.* at 1332–33 (quoting *Appeal of Gro,* 440 Pa. 552, 560, 269 A.2d 876, 880–81 (1970)). Likewise, here, Landowner purchased the Property under a false assumption, or with prior knowledge, that he could not use his Property solely as an office.[10]

■ Landowner had an affirmative obligation to check the Ordinance, and he

---

9. The record also reveals that Landowner based his decision to utilize the Property solely as an office, which he asserts was made after commencing with the renovations, on factors including the rapid growth of his company, the cost of maintaining multiple offices, and the need to bring his staff together at one location. (ZHB Test. at 14.)

10. Before the ZHB, Landowner testified that, prior to purchase, he checked the zoning of the Property but, based on his observation of the character of the surrounding properties, he acted innocently under the assumption that it was permissible to use the Property solely as an office. (Trial Ct. Test. at 40)

cannot claim an unnecessary hardship because of his ignorance of the zoning restrictions. *Appletree Land Dev. v. Zoning Hearing Bd. of York Twp.*, 834 A.2d 1214, 1218 (Pa.Cmwlth.2003). As succinctly stated by this Court in *Mucy v. Fallowfield Twp. Zoning Hearing Bd. of Washington County:*

> [A] landowner is dutybound to check the zoning status of real estate, and the failure to do so, which results in lack of knowledge, cannot support the issuance of a variance. One who undertakes to make use of real estate for commercial purposes without inquiring as to whether the use is permitted by the municipality's zoning ordinance, does so at his own peril.

147 Pa.Cmwlth. 644, 609 A.2d 591, 594 (1992) (citations omitted). We further note that a refusal to grant a variance for self-inflicted hardships is in accord with this Court's "strong policy against assisting landowners who violate a zoning ordinance, whether negligently or intentionally." *Appletree Land Dev.*, 834 A.2d at 1218. Accordingly, we find that any hardship suffered by Landowner to be self-inflicted and not warranting the grant of a variance.

■ We, moreover, take issue with the trial court's finding of an unnecessary hardship on the basis that "the non-residential and commercial nature of the area near the Property renders it largely unusable for *traditional residential purposes* ...." (Trial Ct. Op. at 12) (emphasis added). It was an error of law for the trial court to conclude that the R–2 District is zoned for *traditional residential pur-*

*poses,* and the requirement that the Landowner utilize the Property for such a use creates an unnecessary hardship. The R–2 District, in fact, explicitly provides for uses that are not of a traditional residential nature.

■ We also agree that a variance here is not necessary for the reasonable use of the Property. While Landowner may not "enjoy living [at the Property] because of the traffic and traffic noise" resulting from the nature of an area zoned for mixed residential and other uses (Trial Ct. Test. at 28), those conditions existed before, during, and after the time he purchased the Property.[11] In fact, this zoning district is specifically designed to provide for mixed uses. While we doubt that Landowner ever intended to use the property as his residence, his desire to reside in a residential neighborhood does not require that we eliminate the mixed use character of this zoning district, so as to permit him to use the Property in a purely commercial manner. Landowner had a duty to inquire as to the permissible uses of the Property prior to purchase, *Mucy,* and his current complaints regarding traffic, noise, and the surrounding commercial uses do not transform a currently viable use of the Property within the restrictions of the R–2 District into an unreasonable one necessitating the grant of a variance. *See One Meridian Partners, LLP v. Zoning Bd. of Adjustment of City of Phila.*, 867 A.2d 706, 710 (Pa.Cmwlth.2005) (reaffirming the principle that variances are only granted to cure an unnecessary hardship deriving from the inherent character-

---

**11.** Furthermore, while it is arguably true that Landowner might be able to attain a greater financial return on the Property by using it solely as an F–3 Professional Office, that reason, by itself, is insufficient for the granting of a variance. *See Laurel Point Assoc. v. Susquehanna Twp. Zoning Hearing Bd.*, 887 A.2d

796, 803 (Pa.Cmwlth.2005) (reasoning that "[a]lthough we might agree that the Property is not the best site for residential development and that it would be more profitable for [the landowner] to develop the Property commercially, that does not entitle [the landowner] to a validity variance").

istics of property, not a particular owner's desired use of that property). Therefore, the grant of a variance here is not necessary for the reasonable use of the property within the R–2 District and would conflict with the requirements of the MPC.[12] *Vacca.*

In accordance with the foregoing opinion, the trial court committed an error of law by not addressing the MPC's requirement [13] that the hardship justifying the variance not be self-inflicted and by holding that a predominance of property with a partial commercial use in a mixed-use zoning district makes enforcement of the R–2 District's requirement that a landowner reside on the Property unreasonable and creates an unnecessary hardship. We therefore reverse.

### ORDER

**NOW,** February 3, 2006, we hereby reverse the order of the Court of Common Pleas of Bucks County in the above-captioned matter.

---

**12.** We also note that the trial court's finding that "mandating the Property be used for residential purposes is impractical" (Trial Ct. Op. at 11) is not supported by evidence of record. In making this finding, the trial court noted a letter submitted by a neighbor to the effect that the Property is "no longer a location friendly to raising a family." *Id.* However, while Landowner and his neighbor may be of the opinion that the Property is no longer viable as a residence, the evidence of record establishes that Landowner, and several of his neighbors, are, in fact, residing and operating a business on their properties in a manner conforming to the Ordinance's restrictions for the R–2 District.

**13.** The necessity of addressing each element for a variance, as found in section 910.2 of the MPC, was recently noted by this Court:

[S]ection 910.2 of the MPC requires a ZHB to make findings "where relevant." This implies that not all criteria must be satisfied

## DISSENTING OPINION BY Judge SIMPSON.

I respectfully disagree with the rationale and the result reached in the majority opinion. For the following reasons, I would affirm.

Primarily, I disagree with the majority's discussion of self-imposed hardship. The fact-finder, the trial court here, identified the hardship as "the surrounding parcels of land are dissimilar and disharmonious" and "the non-residential and commercial nature of the area near the property renders it largely [unusable] for traditional residential purposes." In particular, the trial court found (with emphasis added):

> We also believe the surrounding parcels of land are dissimilar and disharmonious to the subject property. The parcels of land within the one mile stretch of Route 611 where the Property is located present a variety of commercial and non-residential land uses. Specifically, the Court learned of the following uses on the east and west side of Route 611 from Curly Hill to Stump Road: tree

in every case and that the quantum of proof necessary to establish a particular criterion may vary depending on the type of variance sought. We also note that the criteria enumerated in section 910.2 of the MPC reflect the substantive due process analysis courts have employed in reviewing zoning schemes, which involves balancing the rights of a property owner to freely use his or her land against the interest of the public welfare which the zoning ordinance seeks to protect. Indeed, subsections (1) through (3) of section 910.2 reflect more of the former notion, while subsections (4) and (5) reflect the latter and would become relevant only if a ZHB finds that an applicant has sustained its burden under subsections (1) to (3), because subsections (4) and (5) look to the future and address the proposed change to the property, i.e., they evaluate the variance as it would be authorized.

*Laurel Point Associates v. Susquehanna Twp. Zoning Hearing Bd.*, 887 A.2d 796, 801 n. 9 (Pa.Cmwlth.2005) (citations omitted).

farm, nursery, two (2) separate churches, residences used for various contracting businesses, tavern, auto body shop, auto sales lot, two (2) banks, three (3) separate shopping centers, chiropractor's office, fruit store, automotive repair shop, a bell manufacturing company, excavation company, doctor's office and a large u-pick style farm. In addition, *the view from the rear of the home is of a cement and septic services plant.* Such evidence paints a picture of a parcel of land located on a high-speed roadway surrounded by properties utilized for commercial purposes. *Accordingly, we find the non-residential and commercial nature of the area near the Property renders it largely [unusable] for traditional residential purposes and believe the Wilsons have proven an unnecessary hardship.*

Trial Court Slip Opinion, 4/25/05 at 12. These findings are supported by the evidence. In addition, they are reasonable. Who would want to live there? [1]

The majority opinion redefines the hardship as "Landowner's inability to utilize the Property solely as an office." Majority Opinion, at 852. It then states the hardship was created by the purchase itself, the hardship was known or knowable at the time of the purchase, and the hardship does not derive from the inherent characteristics of the property but rather from the landowner's personal desire to gain a greater use of the property than those permissible and viable uses specified in the zoning district. Majority Opinion, at 852. I disagree with these conclusions for both logical and legal reasons.

Logically, I don't see how the dissimilar and disharmonious situation found by the trial court could possibly be created by the landowner's purchase. Also, I don't understand how any desire of the landowner created the high-speed roadway, the dissimilar and disharmonious commercial uses, or the view. These conditions existed independent of any action of or any thought by the landowner. Whether or not these conditions constitute unnecessary hardship (which is a different question), they were not created by and existing for the first time when the property was purchased.

Legally, I question whether a reviewing court may redefine the hardship found by the fact-finder. It seems to constitute fact-finding. Our Supreme Court recently admonished this Court to refrain from substituting our judgment for that of the fact-finder in a zoning case. *Noah's Ark Christian Child Care Ctr., Inc. v. Zoning Hearing Bd. of W. Mifflin,* 584 Pa. 9, 880 A.2d 596 (2005).

Moreover, the majority's discussion is at best inconsistent with our recent decision in *Manayunk Neighborhood Council v. Zoning Bd. of Adjustment of the City of Phila.,* 815 A.2d 652 (Pa.Cmwlth.2002), *petition for allowance of appeal denied,* 574 Pa. 777, 833 A.2d 145 (2003), and with scholarly opinion. In *Manayunk,* we held that pre-purchase knowledge of zoning restrictions limiting development, without more, does not create a hardship. *Accord* 2 Robert S. Ryan, *Pennsylvania Zoning Law and Practice,* § 6.2.13 (2001 ed. & Supp. 1 2005). Under this authority, the

---

1. The majority concludes this finding constitutes an error of law because the district is not zoned for traditional residential purposes. As can be seen in the quote above, however, the trial court did not state that the property is zoned for traditional residential purposes. Instead, a fair reading of the entire statement reveals the trial court found that no one would want to reside in this house because of the roadway, the dissimilar commercial uses and the view.

I know of no rule of law that precludes such a factual determination, and the majority opinion cites to none.

state of a landowner's knowledge of viable uses is not a self-created hardship. Nevertheless, the majority declares the landowner "purchased the Property under a false assumption, or with prior knowledge, that he could not use his Property solely as an office." Majority Opinion, at 852.

Finally, I don't think that the landowner's attempt to live in the property precludes relief. Rather, I would affirm the grant of a variance, because, as found by the trial court, no one would want to live in a house on a high-speed roadway, surrounded by dissimilar commercial uses, and with a view of a cement and septic services plant.