Marple Gardens, Inc. *v.* Zoning Board of Adjustment and Johnson, et al., Intervenors.

Argued February 7, 1973, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER, ROGERS and BLATT.

*Louis F. Floge*, with him *Melvin G. Levy, Louis J.
Sinatra, Schnader, Harrison, Segal & Lewis*, and *Levy
and Levy*, for appellant.

*Murray S. Eckell*, Special Counsel, with him *Eckell,
Sparks, Vadino, Auerbach & Monte*, for appellee.

*Edward A. Sevastio*, for intervenors.

OPINION BY JUDGE KRAMER, April 13, 1973:

This is a zoning case. It arises on appeal from the final order of the Court of Common Pleas of Delaware County dated July 25, 1972, in which the appeal of Marple Gardens, Inc. (Marple Gardens) was dismissed. The effect of the court order was to affirm the decision of the Zoning Board of Adjustment (Board) of the Township of Marple (Township) denying a variance to Marple Gardens.

In 1959 or 1960 (the record is not clear), Marple Gardens purchased 17.843 acres of unimproved land in the Township. At the time of the purchase, the land had been used as a nursery. At the time of its purchase, Marple Gardens was fully aware that the land was zoned R-1 Residential (as it is still zoned to this date). The R-1 Residential zoning classification permits a single-family residence with a minimum of 12,-000 square feet per lot. At the time of purchase, the property was located on a two-lane road, known as Lawrence Road. However, since the purchase, Lawrence Road has been widened to four lanes.

Sometime prior to March 19, 1968, Marple Gardens requested that the Township's Commissioners rezone the property in question so as to permit apartment dwelling usage. This request was denied. On March 19, 1968, Marple Gardens applied for a permit to erect six "garden-type apartments containing approximately 350 units" on said property. The application was rejected by the Building Inspector on August 6, 1968. Marple Gardens then filed an appeal to the Township Zoning Board of Adjustment, in which it also requested a variance from the terms of the Township's zoning ordinance. After hearing, the Board on November 26, 1968, rendered an adjudication and order in which it dismissed the appeal of Marple Gardens, thereby denying the request for a variance. Thereafter, Marple

Gardens appealed to the Court of Common Pleas of Delaware County on December 4, 1968. The court below took additional testimony and received additional evidence. After hearing, the court issued its opinion and order dated July 25, 1972, dismissing Marple Gardens' appeal. It was from this order that an appeal was taken to this Court.

In considering the merits of this appeal, we must bear in mind the following principles which govern the disposition of variance cases. First, since the court below took testimony and received evidence in addition to the record made before the Board, on appeal to this Court, our review is to determine whether the court, rather than the Board, abused its discretion or committed an error of law. Error of law here includes constitutional questions. *See Richman v. Zoning Board of Adjustment*, 391 Pa. 254, 137 A. 2d 280 (1958); *Drop v. Board of Adjustment*, 6 Pa. Commonwealth Ct. 64, 293 A. 2d 144 (1972). Second, variances should be granted sparingly and only under exceptional circumstances. *See McClure Appeal*, 415 Pa. 285, 287, 203 A. 2d 534, 535 (1964); *Crafton Borough Appeal*, 409 Pa. 82, 87, 185 A. 2d 533, 536 (1962). Third, in order to establish a right to a variance, an applicant must prove (1) unnecessary hardship which is unique or peculiar to the applicant's *property*, as distinguished from the hardship arising from the impact of the zoning act or regulations on the entire district, or even to hardship on the owner of the property and (2) that the proposed variance is not contrary to the public safety, health, morals or general welfare. *See Gro Appeal*, 440 Pa. 552, 269 A. 2d 876 (1970); *Marple Township Appeal*, 430 Pa. 113, 243 A. 2d 357 (1968); *Drop v. Board of Adjustment, supra; Jackson v. York City Zoning Board*, 5 Pa. Commonwealth Ct. 271, 290 A. 2d 438 (1972). Fourth, a variance will not be granted solely

because the petitioner will suffer an economic hardship if he does not receive a variance. *See Bilotta v. Haverford Township Zoning Board of Adjustment,* 440 Pa. 105, 270 A. 2d 619 (1970) ; *O'Neill v. Zoning Board of Adjustment,* 434 Pa. 331, 254 A. 2d 12 (1969) ; *Andress v. Zoning Board of Adjustment,* 410 Pa. 77, 188 A. 2d 709 (1963) ; *Drop v. Board of Adjustment, supra.* Fifth, a variance will not be granted to the applicant where he knew of the existing zoning regulations and the problems bringing about the hardship, or should have known them, at the time he purchased the property. *See Gro Appeal, supra; Sposato v. Radnor Township Board of Adjustment,* 440 Pa. 107, 270 A. 2d 616 (1970) ; *McClure Appeal, supra.*

Inasmuch as Marple Gardens also challenged the constitutionality of the ordinance, as it applies to the property in question, we are also guided by the words of the Supreme Court in *Gro Appeal, supra,* where the Court said: "The zoning power is one of the tools of government which, in order to be effective, must not be subjected to judicial interference unless clearly necessary. For this reason, a presumption of validity attaches to a zoning ordinance which imposes the burden to prove its invalidity upon the one who challenges it." 440 Pa. at 557, 269 A. 2d at 879.

It is also basic law that one who attacks the constitutionality of a zoning ordinance in this Commonwealth has a very heavy burden. *See Gaudenzia, Inc. v. Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 355, 287 A. 2d 698 (1972) ; *Nagorny v. Zoning Hearing Board,* 4 Pa. Commonwealth Ct. 133, 286 A. 2d 493 (1971) ; *St. Vladimir's Ukrainian Orthodox Church v. Fun Bun, Inc.,* 3 Pa. Commonwealth Ct. 394, 283 A. 2d 308 (1971). In this case, Marple Gardens has attempted to meet its burdens of proving that the court erroneously refused to grant it the variance re-

quested or that this ordinance was unconstitutional as applied, by presenting the following:

1. Marple Gardens offered proof that it did not know that underlying the land at depths of from three feet to ten feet was rock which would inhibit the construction of buildings. The record, however, does not explain what difference, if any, there would be between the expense of constructing single-family dwellings (from the record between 35 and 50 such dwellings could be constructed on the subject land) and the construction of six mid-rise (four to five stories high) apartment buildings containing a total of 330 apartment units. We assume the cost of constructing foundations for the apartment houses would be less, but the record is silent as to the difference in costs. Hence, there is no supporting evidence to prove the alleged hardship. Furthermore, the record clearly shows that although the Marple Gardens may not have known the extent of rock under the surface on the subject land, it was aware of a stone quarry in close proximity to the land, which certainly should have put it on notice of a possible foundation problem.

2. Marple Gardens proved that a 30 inch drain was constructed by the State Highway Department, which spills surface water onto the property, subsequent to its purchase of the land. There is no mention whether there was an agreement or a condemnation proceeding under which Marple Gardens received damages. Furthermore, there is nothing in the record to explain what difference this drain pipe would make when comparing construction of single-family dwelling houses with the proposed apartment complex.

3. Marple Gardens states that the terrain of the subject property has slopes with a gully at the center. Certainly this was patently clear to Marple Gardens when it purchased the property.

4. Marple Gardens states that there are sewer lines and a creek at the rear of the property which creates the hardship. Whether Marple Gardens builds single-family dwellings or an apartment house, these sewer lines and the creek will offer the same hardship to the developer. In addition, the creek was present at the time of the purchase.

5. Marple Gardens states that since purchasing the property there has been an extensive and radical change in the character in the community located along Lawrence Road on which the subject property faces. The record is quite clear that many of these commercial usages were permitted by the Township through the use of zoning changes and variances. The problem with this offer of proof is that the record clearly shows that the subject property is completely surrounded on all sides by residential single-family dwellings.

6. Marple Gardens attempted to show that it was economically impossible to develop the property for single-family dwellings because the cost of building a foundation into the rocky condition of the subsurface would increase the cost of each lot about $4,000, thereby creating a cost $11,500 per single-family lot. Using a rule of thumb (the exact authenticity or correctness for this case was never proven nor questioned on the record) Marple Gardens contended that they would have to sell a single-family dwelling at a price of about $57,500. This price would not be competitive in an area where houses were selling at about $40,000.

Our reading of the record in this case leads us to conclude that there is no doubt that Marple Gardens believes that it cannot utilize this property for single-family dwellings as a financial success. The problem for Marple Gardens, however, is that its own witnesses stated that the property could be used for single-family dwellings and that their primary reservation was that

it would not be economically feasible to carry out such a venture. This testimony was fatally harmful to Marple Gardens' case. The test is not whether the desired use of the property by its owner is the more desirable or even the best use. Rather, in a variance case, the question is whether the property may be used in a reasonable manner within the restrictive provisions of the zoning ordinance or regulation.

The main thrust of Marple Gardens' case in this record is its claim of economic hardship caused by the additional cost of construction of foundations for single-family dwellings if built on this land. As we pointed out hereinbefore, there would be additional foundation costs, whether the construction was for single-family dwellings or for apartment houses. Although the court below relied heavily upon the principle that where the property owner has knowledge of the conditions which cause the hardship to the land, he may not take advantage of his situation so as to qualify for a variance (*Gro Appeal, supra; Sposato v. Radnor Township Board of Adjustment, supra; McClure Appeal, supra.*) this case does not turn on that principle. It is conceivable a case could have been made by Marple Gardens, based upon the after-discovered rock foundation problem. The record, however, does not support such a contention as we have already noted.

Marple Gardens also failed to meet the test or burden of proving that its requested variance was not contrary to the public safety, health, morals or general welfare of the community. In this case, there is evidence that at the time of the hearing the local sewer authority did not have the capacity to take on the additional sewage that was estimated to come from Marple Gardens' proposed apartment complex. We note, however, that the sewer authority was hopeful that the sewage condition would be corrected by 1972. This

opinion is written in 1973, but we have no knowledge whatsoever that the contemplated sewer facility was ever constructed or that the sewer authority is now able to accept the additional sewage which would have been created by the Marple Gardens complex. The point is that the court below had on the record facts which support its conclusion that the proposed apartment project would jeopardize and violate the public safety, health or general welfare. *See Marple Township Appeal, supra; Dishler v. Zoning Board of Adjustment,* 414 Pa. 244, 199 A. 2d 418 (1964); *Crafton Borough Appeal, supra.* In light of the above, it also becomes apparent that Marple Gardens did not meet the burden of proof required to successfully challenge the constitutionality of the ordinance. *See Gro Appeal, supra; DiSanto v. Zoning Board of Adjustment,* 410 Pa. 331, 189 A. 2d 135 (1963).

In summary, our review of the entire record and the applicable law stated herein permits us to conclude that Marple Gardens has failed to meet its burden in support of its requested variance under the "unnecessary hardship" and "public safety, health, morals or general welfare" tests, nor did it prove the ordinance unconstitutional. In closing, we believe it appropriate to make two observations. First, although this record clearly describes Lawrence Road as a developing commercial thoroughfare, where recently there have been developed at least four apartment projects, a bank, two professional buildings, a supermarket, a shopping center and other commercial uses, the fact remains that the property in question is completely surrounded on all four sides by residential single-family dwellings. Whether the Township improperly permitted the other commercial ventures in this Township, along Lawrence Road, is not before us. What is before us is whether or not the court below erred in denying Marple Gar-

dens this variance. Based upon the record, we hold that the lower court did not err.

Secondly, there is one perplexing and rather disturbing bit of evidence set forth in two places in the record of this case which we believe should be mentioned in this Opinion. The record shows that, in 1968, the Township adopted a comprehensive zoning plan in which it was clearly stated that the subject property was intended as a site for a future municipal building. One of the witnesses was a Township Commissioner, who stated that it was still the intent of the Township to take the land for municipal purposes. Marple Gardens has only mentioned this bit of evidence incidentally in this case. However, if it should ever develop that this Township has intentionally and unreasonably thwarted the efforts of this landowner in a reasonable and proper use of its property for the Township's intended result of obtaining this property for municipal purposes at a reduced valuation, then the action of the Township would indeed be questionable. *See Miller v. Beaver Falls*, 368 Pa. 189, 82 A. 2d 34 (1951).