Albert Levin, Appellant, *v.* The Zoning Hearing Board of the Township of Radnor, Appellee.

Argued October 5, 1973, before Judges KRAMER, ROGERS and BLATT, sitting as a panel of three.

*Anthony R. Semeraro,* with him *Mullray, Ryan & Semeraro,* for appellant.

*Philip J. O'Malley,* for appellee.

OPINION BY JUDGE KRAMER, January 17, 1974:

This is an appeal filed by Albert Levin (Levin) from an order dated February 6, 1973, of the Court of Common Pleas of Delaware County dismissing Levin's appeal to that court from an adjudication (dated June 30, 1972) of the Radnor Township Zoning Hearing Board (Board). The Board's order, in effect, upheld the refusal of the Township's Director of Licenses and Inspections to issue a certificate of occupancy, which had been requested by Levin in an application for a variance to construct six multi-family buildings containing 84 units and a swimming pool.

The record discloses that Levin purchased the 6.91 acres of vacant land in question on March 26, 1957, at which time the land was zoned R-5, which would have permitted the proposed construction. On April 27, 1960, Radnor Township (Township) rezoned the tract from R-5 to R-4. Under the R-4 zoning classification, single-family dwellings can be constructed on minimum lots of 7,000 square feet; thus mathematically permitting between 35 and 40 dwellings on the tract. In 1970, the Township refused Levin's request for a zoning change to C-O, which would have permitted an office building use, and noted that its Planning Commission at that time believed that an R-5 apartment use would be preferable. In 1972 the Township again refused the request of Levin to rezone the tract back to R-5. Thereafter, Levin filed the subject application seeking a variance which in effect would have permitted

construction of the 84 units as though the tract were zoned R-5.

At the hearing before the Board, it was developed that the westerly boundary of the Levin tract abuts an area zoned R-5, which, however, contains five single-family dwelling usages and one small four-unit apartment house. To the north, the Levin tract abuts another R-5 zoned area, the actual usage of which contains seven single-family dwellings, one four-unit apartment, and one church. To the east, the tract abuts properties which are a combination of single-family and multi-family usages. It should be noted that the easterly property line is quite close to a C-1, commercial zoned area. To the south, the property abuts a right-of-way of the Pennsylvania Department of Highways which formerly was a railroad right-of-way. This right-of-way is elevated approximately 15 feet and separates other R-4 property to the south by what was picturesquely called "The China Wall." To complete the discussion, it should be noted that the Levin tract completely envelops three separate lots, all of which are used by single-family dwellings on the northeasterly portion of the tract. We believe it is fair to say that although the Levin tract abuts R-5 districts on two sides, the abutting properties on three sides are used both for single and multi-family residences, and the fourth side is effectively isolated by the elevated right-of-way.

Levin, in his attempt to support the granting of a variance, adequately proved that because of surface and subsurface water problems, certain construction hardships exist in any development (whether single-family or multi-family) of this tract of land. The record also shows that the Levin tract receives the water drainage from a 35-acre water shed. The record indicates that because of the water problems, the construction of basements for either single-family dwellings or for

multi-family structures would not be practical. It was fairly well established that to prevent subsidence and the cracking of foundations due to the soil condition, there would be a need for special caissons and grade beams, which would increase the cost of construction of single-family dwellings approximately $1,400 per building. Although Levin's brief submits only one question, i. e., whether the Board abused its discretion and committed an error of law, he also raises a question of the constitutionality of the zoning ordinance based upon a question of "spot zoning."

In a zoning case where the court below took no additional evidence, as is the case here, the scope of review by an appellate court is limited to a determination as to whether the zoning board abused its discretion or committed an error of law. Error of law here includes constitutional questions. *See Clawson v. Harborcreek Zoning Hearing Board,* 9 Pa. Commonwealth Ct. 124, 304 A. 2d 184 (1973); *Jones v. Zoning Hearing Board,* 7 Pa. Commonwealth Ct. 284, 289 A. 2d 664 (1972); *Zoning Hearing Board v. Konyk,* 5 Pa. Commonwealth Ct. 466, 290 A. 2d 715 (1972).

The Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, §912, 53 P.S. §10912 sets forth the provisions under which the Board must rule on variances. That section reads as follows: "The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. Subject to the provisions of section 801, the board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance provided the following findings are made where relevant in a given case: (1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other

physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions, and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located; (2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property; (3) That such unnecessary hardship has not been created by the appellant; (4) That the variance, if authorized, will not alter the essential character of the neighborhood, or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and (5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

In granting any variance, the board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this act and the zoning ordinance."

The guidelines under which we consider the merits of a case involving the request for a variance are many. Variances should be granted sparingly and only under exceptional circumstances. *See McClure Appeal,* 415 Pa. 285, 287, 203 A. 2d 534, 535 (1964) ; *Marple Gardens, Inc. v. Zoning Board of Adjustment,* 8 Pa. Commonwealth Ct. 436, 303 A. 2d 239 (1973). In order to establish a right to a variance, an applicant must prove (1) unnecessary hardship which is unique or peculiar to the applicant's property as distinguished from the hardship arising from the impact of the zoning ordinance or regulations on the entire district, or even to

hardship on the owner of the property and (2) that the proposed variance is not contrary to the public safety, morals or general welfare. *See Gro Appeal,* 440 Pa. 552, 269 A. 2d 876 (1970) ; *Marple Township Appeal,* 430 Pa. 113, 243 A. 2d 357 (1968) ; *Marple Gardens v. Zoning Board of Adjustment, supra.* Next, a variance will not be granted solely because the petitioner will suffer an economic hardship if he does not receive a variance. *See Bilotta v. Haverford Township Zoning Board of Adjustment,* 440 Pa. 105, 270 A. 2d 619 (1970) ; *O'Neill v. Zoning Board of Adjustment,* 434 Pa. 331, 254 A. 2d 12 (1969) ; *Marple Gardens, Inc. v. Zoning Board of Adjustment, supra.* Lastly, a variance will not be granted to the applicant where he knew of the existing zoning regulations and the problems bringing about the hardship, or should have known them, at the time he purchased the property. *See Gro Appeal, supra, Sposato v. Radnor Township Zoning Board of Adjustment,* 440 Pa. 107, 270 A. 2d 616 (1970) ; *Marple Gardens, Inc. v. Zoning Board of Adjustment, supra.*

On the question of the challenge to the constitutionality of the ordinance, we are guided by our Supreme Court in *Gro Appeal, supra,* where the Court said : "The zoning power is one of the tools of government which, in order to be effective, must not be subjected to judicial interference unless clearly necessary. For this reason, a presumption of validity attaches to a zoning ordinance which imposes the burden to prove its invalidity upon the one who challenges it." 440 Pa. at 557, 269 A. 2d at 879. It is also basic law that one who attacks the constitutionality of a zoning ordinance in this Commonwealth has a very heavy burden. *See Marple Gardens, Inc. v. Zoning Board of Adjustment, supra; Gaudenzia, Inc. v. Zoning Board of Adjustment,* 4 Pa. Commonwealth Ct. 355, 287 A. 2d 698 (1972) ; *Nagorny v. Zoning Hearing Board,* 4 Pa. Commonwealth Ct. 133, 286 A. 2d 493 (1971).

Levin's argument that the rezoning of his tract to R-4 is "spot zoning" must fail for the reason that Levin's tract envelops three properties presently used for single-family dwelling purposes and abuts onto property of other single-family dwelling usages. Although the "China Wall" on the southerly side of the Levin property acts as a buffer, the other properties to the south of the right-of-way are also presently used for single-family purposes or are otherwise undeveloped. For these reasons, the Levin tract cannot be said to be surrounded by less restricted zoning usages. Levin has failed to carry the heavy burden placed upon him in order to prove the unconstitutionality of the zoning of the R-4 area in question.

Levin's contentions in this case are understandable. There can be no question from the record that the condition of the land (both from the surface water and subsurface water aspects) creates a hardship for Levin; but this hardship is equably applicable on the construction of either single-family dwellings under the provisions of the R-4 zone or for multi-family dwellings under the provisions of an R-5 zone. With the construction of either, special consideration will have to be given to the lack of basements or normal foundations. There is nothing in the record of this case which would indicate that this water condition developed subsequent to Levin's purchase of the property. Quite to the contrary, the record indicates that this water condition has been in existence for many years, even prior to the time Levin purchased the property. Although it is fully recognized that at the time Levin purchased this property it was zoned R-5, there is nothing in the record to indicate what Levin did at the time his tract and other land was rezoned to R-4. It wasn't until several years later that Levin attempted to have the Township rezone his tract back to R-5. Our reading of the record in

this case permits us to conclude that Levin believes that it will be more profitable for him to develop his land under the R-5 regulations. The problem, however, is that Levin's own witnesses stated that the property could be used for single-family dwelling purposes, and that their primary reservation was that it could not be as economically developed under the R-4 regulations. As we said in *Marple Gardens, Inc. v. Zoning Board of Adjustment, supra:* "The test is not whether the desired use of the property by its owner is more desirable or even the best use. Rather, in a variance case, the question is whether the property may be used in a reasonable manner within the restrictive provisions of the zoning ordinance or regulation. The main thrust of Marple Gardens' case in this record is its claim of economic hardship caused by the additional cost of construction of foundations for single-family dwellings if built on this land. As we pointed out hereinbefore, there would be additional foundation costs, whether the construction was for single-family dwellings or for apartment houses. Although the court below relied heavily upon the principle that where the property owner has knowledge of the conditions which cause the hardship to the land, he may not take advantage of his situation so as to qualify for a variance . . . this case does not turn on that principle." 8 Pa. Commonwealth Ct. at 443, 303 A. 2d at 242. The real hardship for Levin in this case is caused by the surface and subsurface water condition of the land. As pointed out hereinbefore, there is nothing in this record to indicate that Levin could not use the property as presently zoned, albeit less profitably.

Although this Court may be very sympathetic to Levin's plight caused by the zoning regulations and the water condition of his land, this Court is powerless to reverse the court below and the Board unless the record clearly shows an abuse of discretion or an

error of law in their refusal to grant the variance and the permit in question. Although counsel for Levin has made an appealing and common sense argument, it cannot prevail in the light of our limited scope of review.

In addition, Levin has failed to meet the burden of proving that his requested variance was not contrary to the public safety, health, morals or general welfare of the community. The record in this case discloses substantial evidence of automobile traffic and water drainage problems upon which the Board and the court below could support their findings and conclusions that the granting of a variance in this case would work to the detriment of the neighborhood.

In summary, Levin has failed to bear his burden of proving that the zoning ordinance resulted in spot zoning and further failed to establish that his tract cannot be developed within the present R-4 zoning classification, as set forth in the Township's zoning ordinance. In view of this conclusion we must affirm the order of the court below.

Judge ROGERS concurs in the result only.