## Mont-Bux, Inc. Appeal

Before Beckert, Bodley and Ludwig, *JJ.*

*Donald M. Semisch*, for appellant.
*Elliot M. Drexler*, for Zoning Hearing Board.

BODLEY, *J.*, February 11, 1977—The Warminster Township Zoning Hearing Board rejected the application of Mont-Bux, Inc. for a special exception to permit the construction of a single-family dwelling on an undersized lot and denied its request for a variance in which appellant sought the same relief in a separate proceeding. Appeals from the respective orders have been consolidated and have been argued before the court en banc.

The subdivision involved is that of the Philadelphia Motor Speedway Association, conceived and recorded in 1922, in which lots with frontages of 50 feet had been laid out. The subject of this case is lot no. 36 of the Speedway tract. It is in an R-3 residential classification in which present zoning requirements call for an area of 9,000 square feet with a 75 foot frontage. The lot in question consists of 7,000 square feet and measures 50 feet in frontage. It is served by public water and sewage facilities.

In 1960, Joseph H. and Loretta Dolar conveyed contiguous lots nos. 32, 33 and 36 (numbered in that order) to Gerald K. and Catherine Sisak. Subsequently, on Ocotber 3, 1960, the Township of Warminster enacted Ordinance No. 76 requiring for the first time a frontage of 75 feet and an area of 9,000 square feet. On June 11, 1963, lots nos. 32 and 36 were sold by the Sisaks to James R. Hurley. The center lot, no. 33, was retained. In 1974 lot no. 36 was purchased by Lewis and Sukie Weiss at a tax sale, and was sold by them to appellant on June 7, 1974.

On December 24, 1967, Warminster Township adopted a revised zoning ordinance which provided in section 1605 that:

"(a) The provisions of Section 1601 [minimum lot area and lot width] shall not prevent the construction of a single-family dwelling, provided the yard requirements are observed, on any lot which was lawful when created and which prior to the effective date of this ordinance was in separate ownership duly recorded by plan or deed, provided that such lot is not less than 7,000 square feet and provided it is permitted by special exception of the Zoning Board of Adjustment.

"(b) This exception shall not apply to any two or more contiguous lots in single ownership as of or subsequent to the effective date of this ordinance in any case where a re-parceling or re-plotting could create one or more lots which would conform to the above provisions."

Appellant purchased lot no. 36 with knowledge that it was undersized but allegedly believing that the provisions of section 1605 were applicable and that a single-family dwelling might be constructed thereon. Several houses in the area of lot no. 36 have been constructed upon similar 50 foot lots. It is not clear which had been built before, and which after the 1960 area and frontage limitations had been imposed. Others are situated upon lots having a 75, 100, or 150 feet frontage. The proposed structure measures 30 feet in width and 36 feet in depth and is planned to be placed on lot no. 36 in such a manner as to leave 10 feet wide sideyards and a 35 feet setback from the property lines, all of which meet the requirements of section 602 of the zoning ordinance. In conformity with section 602(b) the area of the proposed structure would not exceed 25 percent of the lot area.

## SPECIAL EXCEPTIONS

The precise question to be answered in connection with the appeal from the denial of the special exception is whether or not this lot qualifies under section 1605(a), quoted above, as a "lot which was lawful when created and which prior to the effective date of this ordinance* was in separate ownership," and if so, whether the exception in subdivision (b) is inapplicable because lot no. 36 should be construed as one of "two or more contiguous lots in a single ownership . . . where a re-parceling or re-plotting could create one or more lots which would conform to the . . ." increased frontage and area requirement?

In response to this question the zoning hearing board found as a fact that lot no. 36, although laid out in 1922, was not lawful when "created" on June 11, 1963, when the Sisaks sold it to Hurley. The board concluded that "lawful when created" does not refer to the initial laying out of lot no. 36 but rather to the time when lot no. 36 was transferred to separate ownership for the first time in 1963, a date subsequent to the enactment of the zoning regulations. On this basis the special exception was denied the applicant.

The original zoning ordinance of October 3, 1960, was later amended and consolidated into the township's zoning ordinance of December 24, 1967. However, the identical requirements with respect to lot area setbacks and the like for the R-3 zone are to be found in both ordinances. We believe that the

---

*Referring here to the identical provision in Ordinance No. 76, enacted October 3, 1960.

zoning hearing board is correct in its application of the terms of the ordinance and in its denial of the application.

It cannot be denied that the zoning provisions outlined in section 602 of the ordinance are lawful and in keeping with the intent of section 603 of the Municipalities Planning Code of July 31, 1968, P.L. 805, art. VI, sec. 603, 53 P.S. §10603. Nor can it be challenged that the area and setback provisions of the 1960 ordinance apply to all undeveloped land in the R-3 zone unless a vested right to develop a non-conforming lot is found to exist under the applicable law. It is equally clear that the legislature framed section 508(4) of the Municipalities Planning Code, 53 P.S. §10508(4), in such a fashion so as to clearly indicate the intention of protecting the rights of sub-dividers whose subdivision plans either had been approved at a time when there were no zoning restrictions or were in conformity with the then existing subdivision and zoning requirements. That section provides:

"When an application for approval of a plat, whether preliminary or final, has been approved or approved subject to conditions acceptable to the applicant, no subsequent change or amendment in the zoning, subdivision or other governing ordinance or plan shall be applied to affect adversely the right of the applicant to commence and to complete any aspect of the approved development in accordance with the terms of such approval within three years from such approval." Municipalities Planning Code, sec. 508(4), 53 P.S. §10508.

As stated in Mid-County Manor, Inc. v. Haverford Township Board of Commissioners, 22 Pa. Commonwealth Ct. 149, 158, 348 A. 2d 472 (1975), section 508(4) of the Municipalities Planning Code, 53

P.S. §10508(4), "precludes for a three-year period the application of new zoning to land upon which development plans have already been submitted and approved." By reasonable inference it can be concluded that a new zoning ordinance can be applied to, and affect, land upon which development plans have already been approved after the passage of three years.

In York Township Zoning Board of Adjustment v. Brown, 407 Pa. 649, 182 A. 2d 706 (1962), the court sustained the denial of a special exception in a similar situation. That township's zoning ordinance provided in part: "'. . . [P]arcels of land held in single and separate ownership which are composed of contiguous lots originally subdivided into lots having areas or widths less than those permitted in the district in which the parcel of land is located shall be re-subdivided to conform to the area width regulations imposed by this ordinance; provided, however, that where such re-subdivision will result in undue hardship, as in the case of substantial improvements having been made to the property under and subject to any then existing regulations, which improvements render re-subdivision impractical or unusually burdensome, the Zoning Board of Adjustment may grant a Special Exception for the use of such lots as nonconforming lots subject to the provisions of Article XI and within the spirit of these regulations.'" In sustaining the denial of the applications for special exceptions submitted by owners of certain lots which did not meet the zoning requirements imposed upon preexisting subdivisions, the court concluded that not to uphold the decision reached "would be practically to nullify section 701." It agreed that no "undue hardship" in the language of the zoning ordinance had been shown.

But more nearly to the point the court stated: "Nor can we agree with appellant's contention that with respect to those subdivision plans approved by the township prior to the zoning ordinance, there was created a vested right to subdivide the lots as so approved." It quoted with approval this language used by the lower court: "'In the abstract, it is highly desirable in the zoning process that pre-existing land subdivisions should conform to later zoning laws. Otherwise, subdivisions in their infancy could perpetuate for years the problems zoning was designed to eliminate.'"

It is true that in York, supra, appellants were the original sub-dividers and not, as here, a subsequent purchaser of one of the lots. And it is true that the decision in part related to the requirement that the land be re-subdivided to conform with the newly imposed restrictions. But the principle remains sound and it would seem that it was solely for the purpose of creating a limited vested right in the sub-divider that section 508(4) of the Municipalities Planning Code was framed. The principle which was approved in upholding York County's requirement that no special exception was to be granted where a re-subdivision might be imposed upon the land without "undue hardship" would seem to be equally applicable to the peculiar facts of the case before us.

Clearly Warminster Township's intention was to impose the higher restrictions upon all of the R-3 zone, including that contained in the Speedway tract. Recognizing the constitutionally protected interest of the person who held a "lot" in separate ownership prior to the imposition of the upgrading of the area in 1960, section 1605 provided for the granting of a special exception to such a person who

was desirous of constructing a single-family dwelling thereon. As is usually the case, land transfers within the Speedway tract subdivision were made according to the metes and bounds of the separate lots within the original subdivision. Some persons purchased single lots and built houses thereon both before the imposition of the zoning restrictions and perhaps thereafter by way of special exception or variance. On the other hand, others chose to purchase two or more lots as the sketchy record in the case reveals. Some houses are located upon 75 foot lots—obviously the result of a re-subdivision of three original lots. Others chose to build upon 100 foot lots, being a combination of two such lots. And still others chose to build upon 150 foot lots.

This record reflects that, like others, either Dolar, who conveyed the three lots in 1960 to Sisak, or his predecessor in title, had chosen to purchase three lots and build a dwelling on the center lot. Sisak, on the other hand, nearly three years following the imposition of the greater restrictions upon the R-3 zoned land nonetheless sold off lots nos. 32 and 36 which were contiguous to the center lot no. 33, which he retained. His purchaser, Hurley, was fully aware of the zoning restrictions, being at that time zoning officer within the township, but nonetheless purchased undersized lots. We find no difference in that situation from the hypothetical one which could be created today or any time in the future, were it given legal sanction, should other owners of lots with 150 foot frontage elect to sell off portions of their land.

It seems to us that it is of no consequence that owners of lots containing 150 foot frontage acquired the same by one deed having three separate descriptions of 50 foot lots, or perhaps by way of

successive acquisitions of three separate lots prior to the enactment of the zoning ordinance. Having assembled the ground for dwelling purposes the "lot" so assembled became but one lot and no longer could qualify under section 1605 for a special exception to build another dwelling house on a portion thereof. No more reasonable is it to assume that by transferring title to a portion of his 150 foot lot could his successor in title so qualify. The vested right to build upon the undersized lot, as espoused by this appellant, could only be found to exist at the expense of denying applicability of the plain language and intent of section 1605 of the ordinance. As noted in section 215 of the zoning ordinance, after defining the term "lot," the framers stated: "A lot for the purpose of this ordinance may or may not coincide with a lot on record."

We hold that lot no. 36, albeit one lot when laid out in 1922, nonetheless merged into a single lot comprised of lots 32, 33 and 36 when the same passed into common ownership prior to the passage of the zoning ordinance. The "lot" here considered was created thereafter. Obviously, it was not lawful when created and the zoning hearing board correctly rejected the application for the special exception.

## VARIANCE

In denying the applicant's request for a variance, the zoning hearing board concluded that the granting of the variance would not be in harmony with the general purpose and intent of the Warminster Township zoning ordinance, pointing out that the ordinance was specifically designed to prevent continued building on 50 foot lots which practice the board of supervisors had determined resulted in overcrowding. It further concluded that the hard-

ship alleged was not an unnecessary one, but a self-imposed one following applicant's purchase for the purpose of turning a profit. With these conclusions we agree.

Applicant purchased the lot for the sum of $3,000 in anticipation of its being able to secure a special exception or variance which would permit it to construct a dwelling for profit. As pointed out heretofore, this lot cannot be deemed one held in separate ownership from the time of its creation, by reason of its having been merged with the two adjoining lots by prior owners. The "lot" in question was created following zoning with clear knowledge that the lot so created was a nonconforming one and was purchased by this applicant with knowledge of the zoning restrictions.

In order to establish a right to a variance an applicant must prove " '(1) unnecessary hardship upon and which is unique or peculiar to the applicant's property, as distinguished from the hardship arising from the impact of the Zoning Act or regulations on the entire district; and (2) that the proposed variance is not contrary to the public safety, health, morals or general welfare.'" Marple Township Appeal, 430 Pa. 113, 243 A. 2d 357 (1968). "[V]ariances should be granted sparingly and only under exceptional circumstances." Marple Gardens, Inc. v. Zoning Board of Adjustment, 8 Pa. Commonwealth Ct. 436, 439, 303 A. 2d 239 (1973); Levin v. Zoning Hearing Board of the Township of Radnor, 11 Pa. Commonwealth Ct. 452, 314 A. 2d 579 (1974). "[A] variance will not be granted to the applicant where he knew of the existing zoning regulations and the problems bringing about the hardship, or should have known them, at the time he purchased the property." Marple Gardens, supra, at page 440; Levin, supra, at page 458. "In

order for a hardship to be unnecessary it cannot be self-inflicted." Gro Appeal, 440 Pa. 552, 557, 269 A. 2d 876 (1970). As stated in Gro: "The zoning power is one of the tools of government which, in order to be effective, must not be subjected to judicial interference unless clearly necessary." "When [the purchaser] acquired this property [it] did so 'with the conditions of [the now claimed] economic hardship staring [it] in the face, and [it] cannot now heard to complain.'" Crafton Borough Appeal, 409 Pa. 82, 89, 185 A. 2d 533 (1962). See also Philadelpiha v. Earl Scheib Realty Corp., 8 Pa. Commonwealth Ct. 11, 17, 301 A. 2d 423, (1973), wherein the court upheld the zoning hearing board's finding that the application for a variance should be denied. The court stated: "'The applicant has shown no unnecessary hardship in that at the time it became the equitable owner of the subject property, it had or should have had full knowledge of the zoning status thereof and if it finds itself in a detrimental position, it is one it voluntarily chose.'"

These clear statements of the existing zoning law would, one would think, be a sufficient basis alone upon which to reject this applicant's request for a variance and for upholding the finding of the zoning hearing board. However, various cases founded upon their own peculiar facts appear to have watered down these principles and to have blurred the otherwise clear distinctions which earlier zoning law had made between self-imposed hardship and that which is unique to the property itself growing from the impact of zoning upon that parcel alone as distinct from the impact upon the entire community. For example, in Gro, a case in which the applicant paid a substantial sum for a lot in an R-2 zone, in which the construction of apartments was not

permitted, the court appropriately denied the applicant's request for a variance holding that the hardship alleged was a self-imposed one. However, it stated: "Only in a case such as this, which arises after the property has been sold to a new owner who has paid a high price for the property because he assumed that a variance which he had anticipated would justify his price, do we hold that the owner cannot prove that the hardship which burdens his land was unnecessary rather than self-inflicted." 440 Pa. 560. Following this, interpreting Gro, our Commonwealth Court has said: "[O]ur Supreme Court has narrowed the circumstances under which a landowner who purchases with knowledge of the property's condition and the existing zoning classification will be prevented from obtaining a variance. According to Gro, such a landowner's hardship is self-inflicted only where he has paid a high price for the property because he assumed that a variance which he anticipated would justify that price. The mere fact that he puchased with knowledge of the hardship would not alone preclude his being granted a variance." Harper v. Zoning Hearing Board of Ridley Township, 21 Pa. Commonwealth Ct. 93, 98, 343 A. 2d 381 (1975); Borough of Ingram v. Sinicrope, 8 Pa. Commonwealth Ct. 448, 303 A. 2d 855 (1973).

It is interesting to note, however, that in Gro, Justice Roberts in his dissenting opinion would have held that the hardship in that case was not a self-imposed one—but one unique to the land, since single family dwellings it was said, could not properly be erected upon the parcel. No reference was made to the fact that the applicant was not obliged to purchase the lot but did so only in anticipation of profit. The majority of the court held otherwise. In a

concurring opinion the Chief Justice observed that the dissenting opinion sought to advocate a new legal concept "namely—that self-imposed economic hardship is a justification for the grant of a variance." He concluded: "The acceptance of such a principle would completely undermine all of our zoning legislation."

While other decisions on the subject might at first blush appear to support the conclusion that the concept of self-imposed hardship has been all but abolished, as feared by the Chief Justice, we do not believe that is truly the case.

In the case before us the applicant has pointed to Jacquelin v. Horsham Township, 10 Pa. Commonwealth Ct. 473, 312 A. 2d 124 (1973), in support of its contention that the zoning hearing board had erred. In Jacquelin an unimproved lot in an R-4 zone measuring 50 feet by 125 feet, with an area of 6250 square feet, was owned by one Depinto in separate ownership prior to the enactment of zoning. The appellant was the equitable owner of the undersized lot which he had agreed to buy for the purpose of placing a dwelling house thereon for his mother. A variance was sought for area, setback, sideyard and width requirements and was denied by the zoning hearing board. The common pleas court affirmed. The Commonwealth Court reversed saying that in such a case there is more than "mere economic hardship" and did not speak of the hardship as having been self-imposed even though the applicant had agreed to purchase the lot with knowledge of the zoning deficiencies. Quoting from Poster Advertising Company, Inc. v. Zoning Board of Adjustment, 408 Pa. 248, 182 A. 2d 521 (1962), the court stated: ". . . this is not a case of 'economic hardship' such as where the owner seeks to use the

land in a more profitable manner. This is a case wherein any productive use of the land will be denied altogether. It is a case of the existence of a substantial hardship peculiar to this particular land." The court went on to say that in such a case the grant of a variance is necessary to avoid the confiscation of property without just compensation. If the Jacquelin holding is to be applied without distinction to every request for a variance on an undersized lot we would be obliged to conclude that our decision here is in error. However, Jacquelin can be distinguished from the present case in that the lot in Jacquelin was in separate ownership before any zoning laws were enacted, whereas here, as discussed previously, the lot must be held to have been created after zoning, with full knowledge of zoning restrictions and in defiance thereof. We cannot believe that the Jacquelin holding would apply in such a case.

Similarly, Schaaf v. Zoning Hearing Board of Edinboro, 22 Pa. Commonwealth Ct. 50, 347 A. 2d 740 (1975), speaks in the same vein. In Schaaf the applicant bought a parcel of 2.985 acres in an R-1 zone, a small portion of which had been laid out as part of a subdivision prior to zoning. The lot in question was approximately 50 feet x 125 feet and was nonconforming. In Schaaf, the purchaser of the lot, which had been held in separate ownership prior to his purchase, applied for a building permit. The same was issued by the borough authorities notwithstanding the nonconforming lot size and the plans submitted which would have violated front and rear yard requirements. When the borough council later learned of its error it rescinded the permit. Thereupon a variance was sought and rejected.

The common pleas court sustained the appeal and granted the variance solely upon the basis that the applicant had, in good faith, expended substantial sums of money on the strength of its permit prior to its revocation. The Commonwealth Court affirmed but based its affirmance on different grounds, holding that the zoning hearing board had abused its discretion. The court said the case was controlled by Jacquelin and stated that the lot would be virtually useless unless the applicant were permitted to build, "thereby [imposing] an unnecessary hardship on [the applicant]." The court also rejected the argument that the applicant had created his own hardship in purchasing the undersized lot saying *"in circumstances such as these*, the resulting hardship is a consequence of the zoning and does not result from the purchase." (Emphasis supplied.)

Two points distinguish that case from the one before us. In the first place the zoning ordinance under consideration provided: "Where the owner of a lot of official record, which lot does not include sufficient land to conform to . . . requirements of this ordinance, an application may be submitted to the Zoning Hearing Board for a variance from the terms of this ordinance . . . provided that yard and other requirements are complied with as closely as possible." It is noted that such an ordinance does not deal with separate and single ownership but seems to authorize a blanket approval for the issuance of future variances in such cases so long as the zoning requirements are adhered to "as closely as possible." Further, the error of the borough authorities cannot be overlooked and the equities were clearly upon the side of the applicant in view of his having expended substantial sums on the strength of the permit already issued.

Swift v. East Hempfield Township Zoning Hearing Board, 20 Pa. Commonwealth Ct. 87, 340 A. 2d 592 (1975), is yet another case which would appear to give blanket approval to the issuance of a variance notwithstanding the fact that the hardship was self-imposed, were one to read the case in a general sense rather than as applying to its peculiar facts. In Swift the applicant bought the lot in question, containing 33,000 square feet, at a tax sale. The minimum lot size in the district was 10,000 square feet, However,the lot purchased was encircled by the rear yards of other houses built upon lots laid out upon a plan which reserved the lot in question, probably for playground purposes. The applicant's lot had an access strip of 15 feet x 140 feet to the nearest street and the applicant was thus obliged to seek a variance from a 50 foot frontage requirement in the zone. In denying the variance the zoning hearing board, among other reasons, concluded that the applicant knew or should have known of the zoning deficiency when he bought the lot and that any hardship which followed the purchase was self-imposed and was "not unnecessary hardship." The common pleas court affirmed.

The Commonwealth Court in Swift did not render a decision on the merits of the case but remanded because no stenographic record had been supplied the court and because the record was deficient in other aspects. However in remanding, the court made a "few suggestions" for the benefit of the lower court. The court said that if a lot existed before zoning, a variance "cannot be lightly refused," citing Jacquelin. In further dicta it was said in Swift that Jacquelin held that "the owner of a lot held in separate ownership, which was deprived of all productive use by reason of its nonconformity to subsequently enacted zoning requirements, [is] en-

titled to variances necessary to permit his use of the lot." It did not discuss further the question of self-imposed hardship even though that was one of the grounds upon which the zoning hearing board had rejected the application. In a case such as Swift, however, it would not seem reasonable to reject the variance application upon such a ground, when one considers the lot size and the nature of the variance sought. In view of the dissimilarity between the facts of this case and Swift the court could not be deemed to have been speaking to a problem such as the one we are here considering. Further, it is noted that emphasis was again placed upon the "separate ownership" underpinning of the rules enunciated in such cases.

The applicant also cites Lavenson v. Horsham Township, 83 Montg. 139 (1964). In Lavenson the lot in question was purchased by the applicant before any zoning ordinance went into effect. This established the requisite unnecessary hardship imposed by zoning and unique to the property—not self-imposed—and supported the court's holding that the applicant was entitled to the variance he sought. It is thus clearly distinguishable on its facts from the case before us, in which the creation of the lot, as we conceive it, followed zoning restrictions and was in derogation thereof.

In summary, it would seem that "unnecessary hardship" is not established by the mere showing of economic hardship and certainly not when that economic hardship was self-imposed. Whether or not a hardship is to be deemed self-imposed must depend upon all of the circumstances of the case. In the case before us we conclude that the hardship alleged was indeed a self-imposed one, and that a contrary holding would permit the continued sale and improvement of all remaining undeveloped

parcels of land which might be sold off by owners presently holding assembled lots of 100 feet or more frontage, so long as the 1922 standards of a 50 foot frontage could be secured and an orignally platted "lot" were transferred. To permit this would be to negate the township's zoning efforts by judicial fiat contrary to the clear intent of the Municipalities Planning Code and the township's zoning ordinance.

## ORDER

And now, February 11, 1977, for the above-stated reasons, the appeals of Mont-Bux, Inc., from the decisions of the Warminster Township Zoning Hearing Board denying its application for a special exception and for a variance are denied and dismissed.