## In re: Appeal of Thiokol Corporation

*John A. Vanluvanee,* for plaintiff.
*Leonard B. Sokolove,* for defendant.

BORTNER, *J.,* May 30, 1980—This matter draws our attention to the test for exclusionary effect in municipal zoning as it pertains to Bristol Township. Specifically, this court is asked to determine whether recent Pennsylvania cases which find zoning ordinances unacceptable when they have an exclusionary effect seek to guard against the exclusion of certain *forms of housing* or certain *types of people.*

This court does not believe that lumber and blueprints have civil rights which we may protect. It is the right of human beings, however, to make housing decisions without the hinderance of exclusionary, separatist zoning. We find that Bristol Township, through its zoning ordinances, has met its human and legal duty by permitting a wide variety of housing choices to be made available to people of all economic and cultural categories. The Board of Commissioners of the Township of Bristol did not abuse its discretion nor commit an error of law in finding its zoning ordinance and map to be non-exclusionary and constitutional. We dismiss the appeal.

Appellant Thiokol Corporation owns a tract of land in Bristol Township, Bucks County, Pa.

By letter dated November 23, 1977, Thiokol Corporation submitted a challenge to the validity of the Bristol Township Zoning Ordinance and Zoning Map pursuant to section 609.1, 53 P.S. §10609.1, and 1004(1)(b), 53 P.S. § 11004, of the Pennsylvania Municipalities Planning Code of July 31, 1968, P.L. 805, 53 P.S. §10101 et seq., as amended. Submitted with the substantive challenge was a proposed curative amendment which would have altered the Bristol Township Zoning Ordinance by changing appellant's tract from a heavy manufacturing zone to a residential zone designed to include townhouses and "twins."

Appellant contends that the Bristol Township Zoning Ordinance and Map are unconstitutionally exclusionary in that they did not zone a fair share of the acreage within Bristol Township for single-family, semi-detached dwellings (twin houses or duplexes) or for townhouses. Appellant also argued that the ordinance and map are unconstitutional because the classification of the tract as "M-2 Heavy Manufacturing" resulted in the confiscation of Thiokol's property.

Hearings on Thiokol's substantive challenge and proposed curative amendment were conducted before the Board of Commissioners of Bristol Township on January 23, 1978; February 9, 1978; February 20, 1978; March 21, 1978; April 26, 1978; and May 24, 1978. On June 22, 1978, the board filed its findings of fact, conclusions of law and order rejecting appellant Thiokol's proposed curative amendment and challenge to the validity of the zoning ordinance. Appellant filed a timely appeal to this court and it is that appeal we are considering in this opinion.

No additional evidence was presented to or received by the court and accordingly, we are limited

to a determination of whether the Board of Commissioners abused its discretion or committed an error of law: Warwick Land Development Corporation v. Board of Supervisors of Warwick Township, 31 Pa. Commonwealth Ct. 450, 376 A. 2d 679 (1977); Appeal of St. Sophia Religious Assoc. v. Township of Cheltenham, 27 Pa. Commonwealth Ct. 237, 365 A. 2d 1389 (1976). Errors of law include questions of constitutionality: Levin v. Zoning Hearing Bd. of The Township of Radnor, 11 Pa. Commonwealth Ct. 452, 314 A. 2d 579 (1974); Wayesborough Corp. v. Easttown Twp. Zoning Hearing Board., 23 Pa. Commonwealth Ct. 137, 350 A. 2d 895 (1976).

Bristol Township is a northeastern surburb of Philadelphia, located about 21 miles from "center city" Philadelphia. The Pennsylvania Turnpike bisects the township and the final exit for the turnpike's eastbound traffic (Exit 29, "Delaware Valley") lies in the township near the Delaware River. Interstate 95, also a limited access highway, intersects the township and permits non-stop automobile travel into Philadelphia. New Jersey is also directly connected to Bristol Township through both the Pennsylvania-New Jersey Turnpike Bridge and the Burlington-Bristol Bridge. The 1970 census set the township's population at 67,498; the total acreage of the township is approximately 10,400 acres. Approximately 22 percent of the township land is undeveloped.

Appellant Thiokol is the owner of the subject tract in the vicinity known as Five Points and bounded by Woodbourne Edgely Road, New Falls Road, Wistar Road and Queen Ann Creek. It consists of 134.245 acres. It is presently zoned M-2 Heavy Manufacturing, with the exception of 3.2 acres fronting on New Falls Road zoned

C-Commercial. The property had been used for manufacturing by Thiokol and its predecessor since 1939, until Thiokol recently terminated its operations at the site. Since the adoption of the Bristol Township Zoning Ordinance in April, 1952, the subject property has been zoned M-2.

A zoning ordinance is presumed to be valid and constitutional and one who asserts the contrary must meet the heavy burden of clearly establishing that the provisions of the ordinance under attack are arbitrary and unreasonable and have no relation to the public health, safety, morals and general welfare: Schubach v. Silver, 461 Pa. 366, 336 A. 2d 328 (1975).

When it is demonstrated, however, that a zoning ordinance totally excludes a facially legitimate use, the presumption of validity attaching to the ordinance is rebutted and the municipality must then present evidence to establish that its ordinance bears a relationship to the public health, safety and welfare: Klem v. Zoning Hearing Board of Jackson Township, 35 Pa. Commonwealth Ct. 560, 387 A. 2d 667 (1978); Application of Friday, 33 Pa. Commonwealth Ct. 256, 381 A. 2d 504 (1978).

Appellant does not argue, however, that the zoning ordinance is unconstitutional because of any total exclusion of a particular land use. Indeed, Bristol Township has classified land for townshouses and twins as well as apartment buildings and single family dwellings. Appellant's position is that the township zoning does not provide for a "fair share" of twins (or semi-detached) and townhouse (or row house) dwellings.

The fair share principle was first adopted by a plurality of the Pennsylvania Supreme Court in Township of Willistown v. Chesterdale Farms, Inc., 462 Pa. 445, 341 A. 2d 466 (1975). In Willistown,

the court invalidated an ordinance setting aside less than one percent of the township acreage for multi-family dwellings on the ground that the zoning allotment amounted to "tokenism" and was thus exclusionary. Justice O'Brien's plurality opinion concluded that the ordinance was unconstitutionally exclusionary "in that it does not provide for a fair share of the township acreage for apartment construction." 462 Pa. 450, 341 A. 2d 468.

The most detailed "fair share-exclusionary zoning" case in Pennsylvania was Surrick v. Zoning Hearing Board of The Township of Upper Providence, 476 Pa. 182, 382 A. 2d 105 (1978) which provides more helpful language for our analysis.

The decision in Surrick requires municipalities designing land use regulations to plan and provide for the legitimate needs of *all categories of people* who may desire to live within the municipality: 476 Pa. 189, 382 A. 2d 108. In discussing the fair share principle, Justice Nix noted that it was adopted to implement concepts found in earlier Pennsylvania cases. Among the concepts embraced by that principle are that a local political unit, which is a logical place for population growth, cannot refuse to bear its rightful part of the burden of growth, and that a municipality must take regional housing needs into account in land use planning: 476 Pa. 189, 382 A. 2d 108 (citing Appeal of Girsch, 437 Pa. 237, 245, 263 A. 2d 395, 399 (1970).) The court did not view the fair share test as a new constitutional principle, but as another method of viewing an ordinance to ascertain whether its provisions bear a substantial relationship to the public health, safety, morals or general welfare, 476 Pa. 191, 382 A. 2d at 109 n.8.

The court provided a method of analysis for ascertaining whether a zoning ordinance is exclu-

sionary. The court had considered several factors in making this determination:

(1) Whether the community was a logical area for population growth, Girsh, supra and Nat'l Land and Inv. Co. v. Easttown Twp. Bd. of Adjustment, 419 Pa. 504, 215 A. 2d 597 (1965). (This factor also includes a community's proximity to a large metropolis and its *projected population growth* as significant considerations: Waynesborough Corp. v. Easttown Twp. Zoning Hearing Bd., 23 Pa. Commonwealth Ct. 137, 143, 350 A. 2d 895, 898 (1976).)

(2) The amount of land available for development in the community: Nat'l Land, supra; Waynesborough, supra; and DeCaro v. Washington Twp., 21 Pa. Commonwealth Ct. 252, 344 A. 2d 725 (1975).

(3) The exclusionary impact of the ordinance: Willistown, supra.

Justice Nix concluded that where the amount of land zoned for multi-family dwellings is small in proportion to the demand and room for potential development, the ordinance is unconstitutionally exclusionary: 462 Pa. 450, 382 A. 2d 111.

The court in Surrick held that the zoning ordinance of Upper Providence Township, Delaware County, was exclusionary. The court found that the township was a logical area for development of population growth because it was only 12 miles from center city Philadelphia and its 9,200 residents lived in a municipality of 3,800 acres.

Using the first step in the Surrick analysis, this court finds that Bristol Township, Bucks County, is *not* a logical area for population growth. Appellant's own witness conceded that the 1970 population of 67,498 had decreased to 65,000 in 1975. Evidence also indicated that a declining population

is projected through the year 2000. We also note that the tract in question is 21 miles from center city Philadelphia, almost twice as far from that area as Surrick's Upper Providence Township (12 miles).

Using the 1970 census figures we determine that Bristol Township has 6.48 people per acre and Surrick's Upper Providence Township has 2.42 people per acre.

In summary, Upper Providence Township is *closer to center city, less populated* and *less crowded* than Bristol Township. It is a logical area for development and population growth. Bristol Township, almost three times as densely populated as Upper Providence and enduring a decline in population for the rest of the century, is not a logical area for development.

Upper Providence Township allowed multi-family housing only on 43 acres of land which were already much developed for commercial uses: 462 Pa. 448, 382 A. 2d 107. The court's majority concluded therefore that the township had not provided a fair share of its land for multi-family dwellings and consequently the township ordinance was declared unconstitutionally exclusionary: 462 Pa. 450, 382 A. 2d 112.

Bristol Township, by contrast, has 18.8 acres of *vacant* land available for townhouses, 23.8 acres of *vacant* land available for twins and 280.0 acres of *vacant* land available for apartments. Townhouses have been built on an additional 8.5 acres and apartments sit already on an additional 1,625.5 acres. This amounts to 1,956.6 acres, or approximately 18.8 percent of total township land zoned for attached housing.

Unquestionably, Bristol Township has provided a fair share of its land for multi-family housing, in-

cluding 42.6 undeveloped acres available for townhouses and/or twins. Appellant Thiokol thinks this is not a "fair share." We disagree.

The thrust of these Pennsylvania exclusionary zoning cases has been to open up municipalities to all kinds of *people,* not unlimited architectural choices. Appellant correctly argues that ordinances which make no provision for townhouses are unconstitutional and he offers Appeal of Olson, 19 Pa. Commonwealth Ct. 514, 338 A. 2d 748 (1975) for support.

It is the language in Olson, however, which convinces this court that people come before housing types. To an argument relating to structural building styles, the Commonwealth Court stated at 19 Pa. Commonwealth Ct. 519, 520, (338 A. 2d 750):

"We fully recognize that there are so many architectural types or styles of residential housing that it would be difficult, if not impossible, . . . to cover every conceivable design in its zoning ordinance . . . We do not believe . . . that it is necessary for a municipality to provide for every conceivable type or style of residential use in its zoning ordinance."

After that first sentence, above, follows a significant footnote at 19 Pa. Commonwealth Ct. 519, 520, 338 A. 2d 750, 751:

"However, our Supreme Court, in residential usage cases, has held that the issue to be decided is *whether the zoning ordinance has been designed so as to disclose an intent to exclude people* and prohibit their use of land for reasonable residential purposes. See Concord Twp. Appeal, 439 Pa. 466, 268 A. 2d 765 (1970) and Girsh, supra. *These are not easy cases, and the development of the law in*

*this area will have to proceed on a case-by-case basis.*" (Emphasis supplied.)

If the concept were still doubtful, the Supreme Court in Twp. of Willistown v. Chesterdale Farms, Inc., supra, made it more obvious that the court's concern was with housing opportunity for people. Mr. Justice O'Brien, speaking for the court, stated (at 462 Pa. at 449-450, 341 A. 2d at 468): "The New Jersey Supreme Court, in Southern Burlington County NAACP v. Twp. of Mount Laurel, 67 N.J. 151, 336 A. 2d 713 (1975), in discussing a zoning ordinance which provided for a total exclusion of apartment dwellings, stated:

'We conclude that every such municipality must, by its land use regulations, presumptively make realistically possible an appropriate variety and choice of housing. *More specifically, presumptively it cannot forecolse the opportunity of the classes of people mentioned for low and moderate income housing and its regulations must affirmatively afford that opportunity, at least to the extent of the municipality's fair share of the present and prospective regional need therefor . . .*' (Emphasis in original)."

This language from Willistown is repeated in Surrick, 382 A. 2d at 108-9.

Appellant Thiokol's proposed twins and townhouses would range in price from $35,000 to $50,000. At the time of the hearings more than 100 single family homes were available in Bristol Township at a market value between $27,000 and $35,000. Obviously, Thiokol is not answering the clarion call for low income housing in Bristol Township.

This writer also notes that the Thiokol tract is near the "Five Points" intersection where five

major streets converge. This area is intolerably congested during weekday rush hours and was the scene of a small riot during the gasoline crunch in the summer of 1979.

We find that the Township of Bristol acted lawfully in finding its zoning ordinance to be constitutional and non-exclusionary. Bristol Township is no longer a logical area for development and it is experiencing a population decline. Multi-family housing is permitted on almost one fifth of the township land, including hundreds of vacant acres. More than 50 acres have been zoned for twins and/or townhouses. We also note that there is more lower income housing available in Bristol Township than in any other Bucks County municipality. Bristol Township excludes no person.

We find appellant's argument to be scholarly but without merit.

And now, May 30, 1980, the appeal of appellant Thiokol is denied.